## PLACID OIL COMPANY, et al., Petitioners,

v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### No. 80–1667.

United States Court of Appeals, Fifth Circuit.*

Feb. 4, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Shank, Irwin, Conant, Williamson & Grevelle, A. B. Conant, Jr., Dallas, Tex., for Placid Oil Co. et al.

J. Paul Douglas, Asst. Sol., Federal Energy Regulatory Comm., A. Karen Hill, Atty., Washington, D. C., for respondent.

Before HENDERSON, ANDERSON and SAM D. JOHNSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Petitioners[1] seek review of the Federal Energy Regulatory Commission's ("Commission") interpretation of this court's decision in *Tenneco Oil Co. v. FERC*, 571 F.2d 834 (5th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). In *Tenneco*, this court reversed that part of the Commission's rate order in Opinion No. 749,[2] requiring the waiver of a refund credit by producers to obtain higher rates. In response to *Tenneco*, the Commission issued on November 28, 1978, its Order Establishing Procedures for Claiming Recoupment of Excess Refund Payments ("November 28 order"). Acting under the procedures of the November 28 order, Placid/Hunt sought recoupment of excess refunds paid as a

1. Placid Oil Company, Hassie Hunt Exploration Company, Hunt Oil Company and Hunt Industries ("Placid/Hunt").

2. Just and Reasonable National Rates for Sales of Natural Gas, Opinion No. 749, 54 F.P.C. 3090 (1975), *rehearing denied*, Opinion No. 749–C, 15 PUR4th 1 (1976), *aff'd. in part and reversed in part sub nom., Tenneco Oil Co. v. FERC, supra.*

result of a waiver of refund credits, required not only by Opinion No. 749, but also by Opinion Nos. 699[3] and 770.[4] The Commission found Placid/Hunt was not entitled to recoupment of refunds waived pursuant to Opinion Nos. 699 and 770, holding that the rule in this court's decision in *Shell Oil Co. v. FERC*, 520 F.2d 1061 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976), indicated the waiver of refund credit required in those opinions was valid. Thus, Placid/Hunt was not allowed to recoup the refund credits it had waived to obtain the rates established in Opinion Nos. 699 and 770. We affirm the Commission's action.

## FACTS

In *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954), the Supreme Court held that the jurisdiction of the Commission encompassed the regulation of independent producers of natural gas, *i.e.*, producers not affiliated with an interstate pipeline.[5] The result in *Phillips* was a dramatic increase in the number of producers to be regulated by the Commission. In response to this increased administrative burden, the Commission instituted proceedings to regulate the wellhead prices charged by independent producers, the regulation being according to certain geographical areas throughout the United States.[6] While the area rate proceedings were pending, the Commission permitted many independent producers to sell their gas at the requested rate, subject to a refund if such rate were later found to be unjust and unreasonable.[7] When the Commission established just and reasonable area rates, it sought to encourage producers to dedicate more gas to the interstate market by allowing producers to work off their refund obligations then due with new dedications. Opinion No. 598,[8] establishing the area rate for the Southern Louisiana Area, had a typical provision allowing producers to credit against their refund obligations one cent per Mcf of gas reserves dedicated to and sold in the interstate market between October 1, 1970, and October 1, 1977. 46 F.P.C. at 147. The refund credit would be earned only as the gas so dedicated was actually sold. Refunds not worked off by October 1, 1977, were then to be discharged by cash payments. *Ibid* at 148. The Commission concluded that "such an incentive will be of net benefit to the consumer, by obtaining additional gas supplies." *Ibid* at 141.

Pursuant to Opinion No. 598, Placid/Hunt dedicated certain volumes of reserves in anticipation of receiving the one cent per Mcf credit. The dedications which are the subject of this review were made after January 1, 1973, but before the issuance of Opinion No. 699, on June 21, 1974, and the issuance of Opinion No. 770 on July 27, 1976.

---

**3.** Just and Reasonable National Rates for Sales of Natural Gas, Opinion No. 699, 51 F.P.C. 2212, *modified and rehearing denied*, Opinion No. 699–H, 52 F.P.C. 1604 (1974), *aff'd. sub nom., Shell Oil Co. v. FPC*, 520 F.2d 1061 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976).

**4.** National Rates for Natural Gas, Opinion No. 770, 15 PUR4th 21, *rehearing denied*, Opinion No. 770–A, 17 PUR4th 317 (1976), *aff'd. sub nom., American Public Gas Association v. FPC*, 567 F.2d 1016 (D.C.Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978).

**5.** The Supreme Court had decided in *Interstate Natural Gas Co. v. FPC*, 331 U.S. 682, 67 S.Ct. 1482, 91 L.Ed. 1742 (1947), that the Commission's jurisdiction encompassed producers of gas which were affiliated with interstate pipelines.

**6.** The Supreme Court upheld this procedure under the Natural Gas Act in its landmark decision, *Permian Basin Area Rate Cases*, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). *See Shell Oil Co. v. FPC*, 520 F.2d at 1066, n.4, listing the various areas and area rate proceedings.

**7.** *See* § 4(d) and (e) of the NGA, 15 U.S.C.A. § 717c(d) and (e).

**8.** *Area Rate Proceeding (Southern Louisiana Area)*, Opinion No. 598, 46 F.P.C. 86 (1971), *aff'd. Placid Oil Co. v. FPC*, 483 F.2d 880 (5th Cir. 1973), *aff'd. sub nom., Mobil Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974).

The Commission soon found the area rate approach to be not entirely satisfactory. In Opinion Nos. 699 and 699–H,[9] the Commission prescribed national rates for "new gas," *i.e.*, gas dedicated to interstate commerce on or after January 1, 1973. The Commission stated that one primary reason for this new, higher national rate for post-December 31, 1972, dedications of gas

> [W]as to encourage new dedications of natural gas to the interstate market "whether such new supplies come from new acreage dedications, or from newly drilled wells, or by diversion from other uses." Order No. 455, *supra*, 48 F.P.C. 218, 227. The most appropriate means of eliciting the new dedications of natural gas required to meet the existing and future reasonable demands of the interstate markets is to make those markets attractive to producers who have supplies of natural gas to sell.

Opinion No. 699, 51 F.P.C. at 2274. The Commission provided in Opinion No. 699 that a producer would not be allowed to receive both the national rate for new gas and the refund credit provided for in area rates. *Ibid* at 2275. In other words, a producer with gas qualifying for the national rate would have to choose whether to receive the national rate only or the area rate with the refund credit.

Placid/Hunt and other producers petitioned this court for a review of Opinion Nos. 699 and 699–H. Among other provisions of those opinions, the petitioners objected to the required waiver of the one cent per Mcf refund credit to obtain the national rate as an improper retroactive modification of prior rate opinions. *Shell Oil Co. v. FPC, supra.* This court in *Shell* upheld the waiver of the refund credit.

A later opinion, Opinion No. 770,[10] increased the national rate for gas produced from wells dedicated on or after January 1, 1975. This opinion was in all material respects identical to Opinion No. 699 and likewise contained a required waiver of the refund credit to obtain the rate specified therein.[11] The District of Columbia Circuit, in passing on this opinion, did not review the required waiver of the refund credit.

While Opinion Nos. 699 and 770 dealt with the rates for newly dedicated gas (*i.e.*, post-December 31, 1972, gas), the Commission initiated proceedings to ascertain whether to increase the rate established for gas dedicated to the interstate market before January 1, 1973. In Opinion No. 749,[12] issued after this circuit had decided *Shell*, the Commission established new national rates for "flowing gas," *i.e.*, gas dedicated to interstate commerce before January 1, 1973. The Commission again required producers to file waivers of refund credits where they elected to charge the higher national rate for flowing gas. Opinion No. 749, 54 F.P.C. at 3127–28.

The waiver of refund credit in Opinion No. 749 did not fare as well as the waiver in Opinion No. 699. On review of Opinion No. 749, this circuit reversed the refund credit waiver requirement necessary to obtain the rates promulgated by that order. *Tenneco Oil Co. v. FERC*, 571 F.2d at 849–50. This court concluded that to require the producers to waive the refund credit to obtain the new rates for flowing gas renigs on a government commitment. *Ibid* at 850. The panel in *Tenneco* took pains to distinguish its holding from that in *Shell*. Exactly how *Tenneco* distinguished *Shell* is the issue we must determine here.

9.  *See* footnote 3, *supra*.

10.  *See* footnote 4, *supra*.

11.  Placid/Hunt in its brief focuses on the gas dedicated pursuant to Opinion No. 699, and gives no facts concerning the gas dedicated pursuant to Opinion No. 770. All parties agree that for purposes of this appeal, Opinion Nos. 699 and 770 are indistinguishable. Placid/Hunt makes no argument as to how gas dedicated under Opinion No. 770 may be distinguished from that dedicated under Opinion No. 770. Accordingly, we assume that Placid/Hunt is content to have its petition with respect to the gas dedicated pursuant to Opinion No. 770 turn on our interpretation of *Shell*, which reviewed only Opinion No. 699.

12.  *See* footnote 2, *supra*.

In response to this circuit's reversal of the required waiver of refund credit in Opinion No. 749, the Commission promulgated the November 28 order.[13] This order established the procedure by which producers could claim recoupment of excess refund payments incurred because of the Opinion No. 749 waiver requirement and its subsequent reversal by *Tenneco*. To substantiate such credits, the Commission required pipeline companies to whom the producers had made such dedications to file Revised Reserves Dedication Reports (Form 334) with the Commission. The producers were required to submit Revised Refund Disbursement Reports and Reallocation Statements based upon the producers' total outstanding refund obligations. The producers also had to file with the Commission unqualified concurrences (or nonconcurrences) of the pipelines in the Revised Refund Disbursement Reports and Allocation Statements.

Pursuant to this order, Placid/Hunt's purchasers at its request submitted several Forms 334, reporting reserves that were dedicated by Placid/Hunt after January 1, 1973. These reports were rejected by the Commission on the grounds that the producers had improperly included in the reports gas reserves being sold at Opinion Nos. 699 and 770 rates, and not at Opinion No. 749 rates.

On October 1, 1979, Placid/Hunt petitioned for rehearing. Placid/Hunt argued that the rejected form applications reflected gas reserves that, while dedicated after January 1, 1973, were dedicated prior to the issuance of Opinion Nos. 699 and 770 in reliance upon obtaining the refund credit established by area rates. Hunt argued that this circuit's decision in *Tenneco* had qualified our decision in *Shell*. Placid/Hunt argued that *Shell* had been limited so as to uphold waivers only of gas dedicated after the issuance of Opinion Nos. 699 and 770, and could not be applied to gas dedicated after January 1, 1973, but before

issuance of those opinions. Because the reserves in question were dedicated prior to Opinion Nos. 699 and 770, continued requirement of the waiver of refund credits constituted an improper retroactive modification of prior rate opinions under *Tenneco*. The Commission analyzed our decisions in *Shell* and *Tenneco*, and concluded that the reasoning in *Tenneco* was limited to Opinion No. 749. The Commission believed that *Tenneco* had distinguished *Shell* not on the basis of the timing of the dedication, but rather on the basis of the elements utilized in arriving at rates in Opinion No. 749 as opposed to the rates in Opinion Nos. 699 and 770. The Commission rejected Placid/Hunt's petition for rehearing.

Placid/Hunt filed petitions for review of the November 28, 1978 order and of the Commission's April 22, 1980, Order Denying Rehearing.

## REVIEWABILITY

■ The Commission argues that we should dismiss Placid/Hunt's petition for review because it failed to seek a timely rehearing of the Commission's November 28, 1978, order establishing the procedures whereby producers could claim refund credits. Section 19(a) of the NGA provides that any party aggrieved by an order issued by the Commission may apply for a rehearing within 30 days after the issuance of such order. 15 U.S.C.A. § 717r(a). Under the NGA, there is no question that timely application for a rehearing is a jurisdictional prerequisite to judicial review. *Boston Gas Co. v. FERC*, 575 F.2d 975 (1st Cir. 1978). Moreover, the time requirements of the statute must be complied with in order to meet this jurisdictional threshold. *Ibid.*

Placid/Hunt correctly rebuts this argument by noting that the Commission's November 28 order was not final and therefore was not reviewable under the doctrine of ripeness necessary for judicial review.

---

**13.** This order was made part of the following proceedings: *Area Rate Proceeding, et al. (Texas Gulf Coast Area)*, Docket Nos. AR64–2, et al.; *Area Rate Proceeding, et al. (Other Southwest Area)*, Docket Nos. AR67–1, et al.; *Area Rate Proceeding, et al. (Southern Louisiana Area)*, Docket Nos. AR61–2, et al. and AR69–1, et al.; *Area Rate Proceeding, et al. (Permian Basin Area II)*, Docket Nos. AR70–1, et al.

Placid/Hunt argues that it was not harmed by this order until the Commission had rejected its interpretation of *Tenneco*.

■ Before judicial review may be obtained by an agency's order, the issues must be ripe for judicial review. To determine ripeness, a court must evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Four criteria to aid the court in making this evaluation are: (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action," within the meaning of the Administrative Procedure Act, 5 U.S.C.A. § 704 (West 1977); (3) whether the challenged agency action has or will have a direct and immediate impact upon the petitioner; and (4) whether the resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency. *Abbott Laboratories v. Gardner*, 387 U.S. at 149–154, 87 S.Ct. at 1515–1518; *Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981).

■ The November 28 order was not ripe for review immediately after its promulgation because it was not final at that time and because Placid/Hunt was not then threatened with direct and immediate impact. In *Columbia Nitrogen Corp. v. FPC*, 559 F.2d 377 (5th Cir. 1977), we indicated that procedural orders, absent a threat of irreparable injury, are not reviewable in this court.[14] The November 28 order was not final, but merely established procedures by which producers could claim recoupment of excess refunds they may have paid as a result of waiver of refund credits to obtain Opinion No. 749 rates. There is nothing to indicate it was the Commission's final word on the significance of *Tenneco*, but was merely a device to initiate the implementation of this court's mandate. Because the order was procedural and not final,

Placid/Hunt was not threatened with a direct and immediate impact. This circuit in *Atlanta Gas Light Co. v. FPC*, 476 F.2d 142 (5th Cir. 1973), indicated that immediate impact means that the order of the Commission must be "definitive," that is, the order must have "some substantial effect on the parties which cannot be altered by subsequent administrative action." 476 F.2d at 147. Placid/Hunt at that time was not threatened with irreparable injury as the Commission may have been receptive to Placid/Hunt's contention that *Tenneco* required similar recoupment for waivers of gas dedicated after January 1, 1973, and before the promulgation of Opinion Nos. 699 and 770. Placid/Hunt properly followed the procedure of the November 28 order, filed its applications with its request that recoupment include refund credits waived under Opinion Nos. 699 and 770, and timely filed applications for rehearing by the Commission of its denial of that request. Placid/Hunt may not be penalized for having waited until the Commission had clearly rejected its position to bring this petition for review. Accordingly, we reject the Commission's threshold argument relating to reviewability.

## SHELL AND TENNECO COMPARED

■ Placid/Hunt interprets *Tenneco* as establishing a rule, which as applied to Opinion Nos. 699 and 770 would invalidate the waiver of the refund credit for gas dedicated before the issuance of those opinions. Placid/Hunt perceives in *Tenneco* the decision that to require waiver of the refund credit for such gas constitutes an improper retroactive modification of prior commitments by the Commission. Although *Shell* upheld the waiver of refund credit requirement in Opinion No. 699, Placid/Hunt argues that *Tenneco* limited the holding in *Shell* to gas dedicated after the issuance of Opinion No. 699. The rule established in *Tenneco*, Placid/Hunt argues, makes illegal the required waiver of refund

14. *See also Pennzoil Co. v. FERC*, 645 F.2d at 399; *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

credit for gas dedicated on or after January 1, 1973, and before Opinion No. 699 and 770.

The Commission, as noted, rejected this argument, holding that the reasoning in *Tenneco* was limited to "flowing gas" covered by Opinion No. 749.[15] The Commission reasoned that in *Shell*, this circuit held it was within the Commission's discretion to replace one incentive structure with another. However, this circuit in *Tenneco* concluded that because Opinion No. 749 contained no incentive element, the Commission could not require the waiver of the incentive refund credit. The Commission believed that this circuit was concerned in *Tenneco* that there was no provision to replace with a new incentive the incentive of refund credit required to be waived. We agree with the Commission's interpretation of *Shell* and *Tenneco*.

Placid/Hunt is mistaken that *Shell* did not address the question of whether waiver of the refund credit would be valid for gas dedicated after January 1, 1973, and before Opinion No. 699. *Shell* described the question as to whether the waiver refund constituted an "improper retroactive modification of prior rate opinions." 520 F.2d at 1082. The panel was clearly aware that Opinion No. 699 included gas dedicated to interstate commerce after January 1, 1973, well before the issuance of Opinion No. 699. *Ibid.* In discussing the refund credit, the panel stated:

> By its orders which are here at issue, the FPC has established a new rate system for gas dedicated to interstate commerce after January 1, 1973.

520 F.2d at 1082–1083. It would be nonsensical to suppose that a question of retroactivity would be raised with respect to dedications made after issuance of Opinion No. 699. Moreover, in the discussion in Opinion No. 699 itself as to the validity of the waiver of the refund credit, the Commission stated:

> We have determined that natural gas producers who elect to discharge their existing refund obligations under prior area rate opinions by dedicating new supplies of natural gas to the interstate market from wells commenced on or after January 1, 1973, will be required to price such natural gas at the rate established by the applicable rate opinion.

51 F.P.C. at 2275. The Commission made clear here that the waiver of refund credit would apply to new gas dedicated before the issuance of Opinion No. 699 in its brief three-page discussion of the refund waiver. The panel in *Shell* could not have been ignorant of this requirement.

Placid/Hunt perceives in *Tenneco* support for its position that *Shell* upheld required waivers of refund for gas dedicated only after issuance of Opinion No. 699. In *Tenneco*, there is language suggesting that the primary factor in determining whether the Commission may require the waiver of a refund credit is in the timing of the dedication of gas.

> There can be no direct incentive for new dedications to which this rate [the Opinion No. 749 rate] would apply, because all

**15.** Before this court, Commission's counsel argues that Placid/Hunt's petition for review must be dismissed because it constitutes an impermissible collateral attack upon this court's decision in *Shell*. Commission's counsel argues that Placid/Hunt's petition seeks to relitigate issues that were or should have been considered in *Shell*. The Commission's counsel cites *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), for the proposition that when a Commission order has become final through the completion of judicial review, *de novo* litigation between the parties of all issues inherent in the controversy, including those that could and should have been raised in the court of appeals, is precluded.

We need not decide whether the issues now raised by Placid/Hunt were or should have been raised in *Shell*. The Commission did not rely upon a form of res judicata to dispose of Placid/Hunt's claim. Instead, the Commission, addressed the merits of Placid/Hunt's claim, and gave its analysis of *Tenneco* and *Shell* and their relationship. Accordingly, we will not rely upon this post-hoc rationalization provided by counsel to affirm the Commission's action. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Mercantile Texas Corp. v. Board of Governors*, 638 F.2d 1255, 1260 (5th Cir. 1981).

gas covered by this rate has already been dedicated. So there is no replacement of one incentive with another. The credits were promised for dedications which have now already been made. Once the reserves were dedicated, in order to take advantage of that promise, the gas flowing from those reserves *must* be sold in interstate commerce. *See Mobil Oil Co.,* 417 U.S. at 299, n.18, 94 S.Ct. 2328 [2341]; *Placid Oil Co. v. FPC,* 483 F.2d 880, 906 (5th Cir. 1973); Summers, *Oil & Gas* § 924 (Flitt ed. 1966). The producers have no choice.

*Tenneco,* 571 F.2d at 849 (emphasis in original). This, though, is a truncated reading of *Tenneco.*

The rule established by *Tenneco* is that if the Commission is to require the waiver of the incentive refund credit for gas already dedicated, it must offer as a substitute a rate which includes an alternative incentive. This rule is consistent with the holding in *Shell. Shell* perceived in the national rate established by Opinion No. 699 an incentive element to encourage exploration and development, and reasoned:

> The new national rate is the product of an independent determination of incentives, and, as it is in so many other regards, the new rate structure is not tied to previous determinations. Replacing one incentive structure with another, or viewed in another light, providing a new alternative rate system, is an exercise of Commission discretion which does not amount to retroactive rate regulation.

*Shell,* 520 F.2d at 1083. This same reasoning was utilized in *Tenneco.* The result was different because the *Tenneco* court perceived no incentive component in the Opinion No. 749 rate.

> This rate [established by Opinion No. 749] gives no "benefit" to any producers for having dedicated the pre-1973 gas to the interstate market. The rate gives them a just and reasonable rate for that gas. This does not accrue from the largesse of the Commission but from the Commission's fulfilling its statutory obligation. The producers by law are entitled to a just and reasonable rate. The one cent/mcf refund credit in addition to the just and reasonable area rate was bargained for in order to get new gas for the interstate market, presumably gas that the interstate market would otherwise have missed. When the bargain was accepted by the producers by making an irrevocable dedication, they were then entitled to the bargain-for credit refund as the gas was sold at a just and reasonable rate. The Commission, by this action, in setting a "new" rate for "old" gas, has determined that the area rates are no longer just and reasonable. The rate set here is just and reasonable. To require the producers to give up the refund credit to get a just and reasonable rate for their gas renigs on a government commitment.

*Tenneco,* 571 F.2d at 850.

That the decision in *Tenneco* turned upon the failure of Opinion No. 749 to include an incentive component in setting a just and reasonable rate, and not upon the timing of the dedication, is made clear by the court's rejection of the Commission's justification in Opinion No. 749–C that the Opinion No. 749 rate contained an incentive component. In the initial decision in Opinion No. 749, the Commission looked only to cost elements in establishing a just and reasonable rate. This was logical as it was determining the just and reasonable rate for gas already dedicated to the interstate market. The Commission there made clear that it was not setting rates to encourage exploration and development.

> If past rates were inadequate to encourage the level of exploration and development necessary to discover sufficient reserves to supply reasonable demands for natural gas, the solution is not to increase the rates for flowing gas to make up the difference but to design rates for new supplies which will encourage the discovery and production of those supplies. The proper function of rates for flowing gas is to recover all costs properly attributable to flowing gas volumes and provide a rate of return which is commensurate with the risks inherent in such activities.

54 F.P.C. at 3105. In the applications for rehearing of Opinion No. 749, however, the Commission justified the waiver of the refund credit requirement with citation to this court's statement in *Shell*:

> [R]eplacing one incentive structure with another or, viewed in another light, providing a new alternative rate system, is an exercise of Commission discretion which does not amount to retroactive rate regulation.

*Shell*, 520 F.2d at 1083. The *Tenneco* court saw this reasoning to be a sham, having nothing to do with what the Commission had done in Opinion No. 749. The *Tenneco* court did not accept the rationale offered by the Commission and found that no incentive component was included within the just and reasonable rate set in Opinion No. 749. The *Tenneco* panel, consistent with *Shell*, held the waiver of the refund credit requirement to be improper.[16]

Finally, insofar as Placid/Hunt is arguing that *Tenneco* has overturned *Shell*, we reject that contention. One panel of this circuit may not overrule the holding of another panel in this circuit in the absence of an intervening change in the law. Absent such change, only the court en banc can overrule a panel's holding.

AFFIRMED.

---

16. Placid/Hunt suggests in its brief that if the *Tenneco* court relied upon a difference in the rationale between Opinion Nos. 699 and 749, it was mistaken. Placid/Hunt correctly notes that both opinions established a "just and reasonable rate." Placid/Hunt also correctly notes that in Opinion No. 699, the incentive component was never quantified. Even if the *Tenneco* panel incorrectly perceived a difference in the rationale between Opinion Nos. 699 and 749, we would not be able to ignore its construction. One panel of this circuit may not overturn another panel in the absence of an intervening change in law or action by the en banc court. *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981). Moreover, our own reading of Opinion Nos. 699 and 749 confirms that an incentive element was present in the Commission's reasoning in Opinion No. 699 and was not in Opinion No. 749. In discussing why it was limiting the applicability of the new rate to gas dedicated after January 1, 1973, and why it could require a waiver of the refund credit, the Commission in Opinion No. 699 stated, "such a division [of gas before January 1, 1973, and on or after January 1, 1973] will provide the incentive necessary to encourage expanded exploration and development programs and new dedications of natural gas to the interstate market." 51 F.P.C. at 2275.