963 F.2d 1380
 PHILLIPS PETROLEUM COMPANY, a Corporation, Plaintiff-Appellant,
v.
Manuel LUJAN, Jr., Secretary, Department of the Interior,
Robert Kallman, Director, or Acting Director, Mineral
Management Service, Department of the Interior, Kenneth M.
Moyers, Chief, Royalty Compliance Division, Nick L. Kelly,
Area Manager, Dallas Regional Compliance Office, Minerals
Management Service, United States Department of the
Interior, the Mineral Management Service, Defendants-Appellees.
ATLANTIC RICHFIELD COMPANY, Plaintiff-Appellant,
v.
Manuel LUJAN, Jr., Secretary, Department of the Interior,
Robert Kallman, Director, or Acting Director, Mineral
Management Service, Department of the Interior, Kenneth M.
Moyers, Chief, Royalty Compliance Division, Nick L. Kelly,
Area Manager, Dallas Regional Compliance Office, Minerals
Management Service, United States Department of the
Interior, the Mineral Management Service, Defendants-Appellees.
 Nos. 91-5071, 91-5072.
 United States Court of Appeals,
Tenth Circuit.
 May 13, 1992.
 
 Thomas L. Cubbage, II, Phillips Petroleum Co., Bartlesville, Okl. (L.K. Smith and Paul E. Swain, III, Tulsa, Okl., Jennifer G. Fry, Phillips Petroleum Co., Bartlesville, Okl., and Boone, Smith, Davis, Hurst & Dickman, Tulsa, Okl., of counsel, with him on the briefs), for plaintiff-appellant Phillips Petroleum Co.
 J. Berry St. John, Jr. and Deborah Bahn Price, of Liskow & Lewis, New Orleans, La., and Joseph W. Morris and David L. Bryant, of Gable & Gotwals, Tulsa, Okl., on the briefs, for plaintiff-appellant Atlantic Richfield Co.
 Robert L. Klarquist, Dept. of Justice, Environment & Natural Resources Div., Washington, D.C. (Barry M. Hartman, Acting Asst. Atty. Gen., Kathleen Bliss Adams, Asst. U.S. Atty., Tulsa, Okl., Lisa K. Hemmer and Edward J. Shawaker, Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., and Peter J. Schaumberg and Geoffrey Heath, Office of the Sol., Dept. of the Interior, Washington, D.C., of counsel, with him on the brief), for defendants-appellees.
 Before TACHA and EBEL, Circuit Judges, and ROGERS, District Judge.*
 TACHA, Circuit Judge.
 
 
 1
 In this consolidated appeal, appellant Phillips Petroleum Company (Phillips) and appellant Atlantic Richfield Company (Arco) appeal the district court's order granting defendants' motions for summary judgment. Phillips and Arco contend that defendants failed to properly initiate an audit pursuant to the Federal Oil and Gas Royalty Management Act (FOGRMA), 30 U.S.C. §§ 1701-1757. Phillips further asserts that defendants failed to comply with the Paperwork Reduction Act (PRA), 44 U.S.C. §§ 3501-3520. Arco also argues that two of defendants' requests for documents impose requirements contrary to federal law. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 BACKGROUND
 
 2
 The Department of the Interior (DOI) is responsible for issuing and administering oil and gas leases for federal lands, 30 U.S.C. §§ 181, 223-237, and for approving the issuance of and administration of oil and gas leases for lands allotted to Indians and for tribal lands, 25 U.S.C. §§ 396-396g. The FOGRMA directs the Secretary of the DOI (the Secretary) to establish "a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." 30 U.S.C. § 1711(a). The FOGRMA further provides that the Secretary "shall audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted, ... [and] may also audit accounts and records of selected lessees and operators." Id. § 1711(c)(1). The Minerals Management Service (MMS) is the agency within the DOI that is responsible for auditing royalty payments on federal and Indian mineral leases.
 
 
 3
 Phillips and Arco hold numerous leases on federal and Indian lands. The FOGRMA requires that lessees "establish and maintain any records, make any reports, and provide any information that the Secretary may, by rule, reasonably require for the purposes of implementing" the FOGRMA. 30 U.S.C. § 1713(a). Lessees also must make these "records, reports, or information ... available for inspection and duplication." Id. Section 1713(b) specifies that lessees must maintain these records "for 6 years after the records are generated unless the Secretary notifies the record holder that he has initiated an audit or investigation involving such records and that such records must be maintained for a longer period."
 
 
 4
 On September 19, 1989, the MMS sent nearly identical letters to Phillips and Arco. The caption on the letters reads, "October 1, 1983, through September 30, 1989, Audit Engagement." The first paragraph of the letters states,
 
 
 5
 This is to formally notify you that the Minerals Management Service (MMS) is initiating an audit of the propriety of the royalty and other payments made by Phillips Petroleum Company (Phillips) [or Atlantic Richfield Company (Atlantic) ] and any and all of its subsidiary and parent companies as necessary for the period October 1, 1983, through September 30, 1989. Therefore, any and all records related to Federal and Indian mineral leases for this period must be retained and be available for inspection by any duly authorized officer of the Department of the Interior. These records must be maintained until their release is specifically authorized in writing by MMS. Any and all personnel of the State and Tribal audit organizations that have audit agreements or delegations with MMS are also duly authorized officers of the Secretary of the Interior (Secretary).
 
 
 6
 (Alteration added.) The remainder of the letter provides the statutory and regulatory authority upon which the MMS based its initiation of the audit, explains that the Dallas Area Compliance office would coordinate the audit, and explains how the MMS and appellants would communicate.
 
 
 7
 The MMS subsequently submitted document requests regarding specific leases to both Phillips and Arco. Two of these document requests sent to Arco are at issue on this appeal. On November 3, 1989, the MMS submitted Request No. 89-23 to Arco. The handwritten Request identified, by an attachment, a list of sample leases that the MMS had selected to audit. After giving an approximate completion date for the audits, the Request stated the following:
 
 
 8
 MMS is requesting that ARCO provide by 11-17-89 any known overpayments that do exist on the offshore properties. This should include those overpayments identified through audits performed by ARCO, or overpayments (refunds) not processed by the Royalty Reporting Unit because of the 2-year statute of limitations.
 
 
 9
 MMS is also requesting by 11-17-89 that ARCO provide a list of leases that have been audited by Internal Audit, Regulatory and Compliance or some group within ARCO; leases to be audited in the next three years; the results of the audit.
 
 
 10
 On April 27, 1990, the MMS submitted Request No. 90.A to Arco. This Request directed Arco to provide "all records and documents, in whatever form, which address or reflect the accounting or reporting of production, sales, revenues, costs and royalties associated with" thirty-eight different leases.
 
 
 11
 On October 23, 1989, Phillips filed a complaint in the United States District Court for the Northern District of Oklahoma requesting that the court enter a declaratory judgment that the DOI, the Secretary, and the MMS must initiate audits, as well as file claims for royalty underpayments, within six years after royalty payments are made; that the MMS' September 19, 1989 letter was unenforceable or arbitrary and capricious; that the DOI must request the production of specific documents pertaining to specific leases in order to commence an audit; that the MMS' document requests violated the Paper Reduction Act; and that, as a result, Phillips was not required to maintain its records as directed by the September 19, 1989 letter.
 
 
 12
 On December 18, 1989, Arco filed a complaint in the same district court requesting that the court provide declaratory relief by setting aside the requirements contained in the September 19, 1989 letter and Request No. 89-23 "to the extent they require [Arco] to retain documents for periods longer than six years after the documents were generated, without identifying any particular documents that the DOI intends to audit and without any audit being underway." The complaint also stated that Request No. 89-23 was invalid to the extent it requires Arco "to generate new documents relating to overpayments and internal audits." On June 25, 1990, Arco filed a First Supplemental Complaint alleging, among other things, that Request No. 90.A was invalid because "defendants do not intend to review the documents required to be produced by Request No. 90.A upon receipt of those documents, nor do they have the auditing capability to do so."
 
 
 13
 Appellees moved for summary judgment with respect to Phillips' complaint. After the district court consolidated the two cases, appellees then moved for summary judgment with respect to Arco's claims. Phillips and Arco each filed cross motions for summary judgment. On January 2, 1991, the district court granted appellees' motion for summary judgment. The court held that the MMS' September 19, 1989 letter did not violate the FOGRMA because "30 U.S.C. § 1713(b) does not state a particular described lease or leases must be the subject of the directive to extend the six-year maintenance of records"; that the MMS' document requests did not violate the PRA because the PRA specifically exempts the MMS' audit and investigation activities; and that the statute of limitations under 28 U.S.C. § 2415 does not abolish the MMS' right provided by law to investigate and review documents.
 
 
 14
 On January 16, 1991, Arco filed a motion pursuant to Fed.R.Civ.Proc. 59(e) seeking to alter or amend the judgment to clarify whether the district court's January 2, 1991 order disposed of all of Arco's claims in the original complaint and in the First Supplemental Complaint. In an order entered on April 8, 1991, the district court denied the motion and held that the prior order "sufficiently addressed the additional relief sought by ARCO in its First Supplemental Complaint since these issues were derivative of the issues in the Original Complaint" and that the prior order disposed of all of Arco's claims in this action.
 
 DISCUSSION
 
 15
 We review summary judgment orders de novo, using the same standard the district court applies. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
 
 I. Initiation of the Audits
 
 16
 Phillips and Arco both contend that the district court erred in holding that the FOGRMA requires them to comply with the MMS' September 19, 1989 letter. Although Congress has authorized federal courts to review agency action, 5 U.S.C. § 704, "the scope of review is a 'narrow one.' " Phillips Petroleum Co. v. Lujan [Phillips I ], 951 F.2d 257, 259 (10th Cir.1991) (quoting Edwards v. Califano, 619 F.2d 865, 868 (10th Cir.1980)). "The fact that [Phillips and Arco] brought [these actions] not on appeal from an administrative ruling but rather as a preemptive declaratory action makes no difference as to the substantial deference we afford to the actions of administrative agencies in compliance with their statutory enforcement obligations." Id. We cannot set aside agency action unless we consider the action "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).
 
 
 17
 Phillips and Arco contend that the MMS' September 19, 1989 letter failed to initiate an audit and thereby obligate them to retain all records identified in the letter. They argue that the "global" nature of the audit purportedly initiated by the September 19 letter does not comply with § 1713(b). They claim that the MMS cannot initiate an "audit"--and thus extend the six-year record retention period--until it begins to review records related to specific leases. Therefore, they assert that the September 19, 1989 letter impermissibly attempted to initiate an audit as to all of appellants' leases without beginning to review those leases or requesting records related to those leases.
 
 
 18
 Appellants assert that § 1713(b) provides one basis for their contention. This section specifies that a lessee must maintain lease records "for 6 years after the records are generated unless the Secretary notifies the record holder that he has initiated an audit or investigation involving such records and that such records must be maintained for a longer period." (Emphasis added.) Arco alleges that § 1713(b)'s use of the term "such records" indicates that Congress did not intend to empower the DOI to require lessees to maintain all of their lease records, but only records related to specifically identified leases. Phillips argues that because the contractual clauses in the leases themselves govern the relationship between the DOI and federal lessees, the DOI's audit rights are limited to a lease-by-lease basis.
 
 
 19
 In arguing that the MMS may audit only on a lease-by-lease basis, appellants overlook the broad auditing powers Congress granted to the Secretary. The FOGRMA requires the Secretary to "establish a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, ... and to collect and account for such amounts in a timely manner." 30 U.S.C. § 1711(a). Section 1711(c)(1) more specifically requires the Secretary to "audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted." (Emphasis added.) That subsection also provides that "[t]he Secretary may also audit accounts and records of selected lessees." 30 U.S.C. § 1711(c)(1). The MMS' decision to audit lessees such as Phillips and Arco on a company-wide basis coincides with these broad statutory statements.
 
 
 20
 We also conclude that the language of § 1713(b) does not prohibit a company-wide audit or otherwise limit the scope of the Secretary's auditing powers granted elsewhere in the Act. That section requires a lessee to maintain for six years "[r]ecords required by the Secretary with respect to oil and gas leases from Federal or Indian lands" and to maintain thereafter records that relate to an audit or investigation that the Secretary has initiated. The language of § 1713(b) in no way limits the scope of an audit, but instead suggests that a lessee must retain any records related to any audit or investigation commenced by the Secretary. Nor does a company-wide audit conflict with the definition of an "audit" found in the regulations promulgated pursuant to the FOGRMA. See 30 C.F.R. § 206.101 ("Audit means a review, conducted in accordance with generally accepted accounting and auditing standards, of royalty compliance activities of lessees or other interest holders who pay royalties, rents, or bonuses on Federal and Indian leases."). In summary, we conclude that the MMS' decision to audit Phillips and Arco on a company-wide--instead of on a lease-by-lease--basis and to require them to retain all related records was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Phillips I, 951 F.2d at 260 ("Administrative agencies vested with investigatory power have broad discretion to require the disclosure of information concerning matters within their jurisdiction.").
 
 
 21
 Likewise, we find nothing in the statutory language of the FOGRMA that suggests that the MMS cannot initiate an audit simply by informing a lessee that it "is initiating an audit." Arco contends that the September 19, 1989 letter's statement that MMS "is initiating an audit" is insufficient to meet § 1713(b)'s requirement that the Secretary notify a lessee that he "has initiated an audit." Arco argues that the past-tense language "has initiated an audit" contemplates that the DOI cannot give notice of an audit until it begins to review the records related to specific leases that it requires the lessees to retain. Finally, both Phillips and Arco assert that the MMS' past practice has been to send a lease-specific audit engagement letter indicating that an audit would begin on a future date. Because § 1713(b) does not require the strict ordering of events suggested by appellants, we conclude that the MMS' determination to announce the initiation of an audit and thereby extend the six-year period for retaining records before commencing a review of records related to Phillips' and Arco's leases was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. See Phillips I, 951 F.2d at 260 n. 5 ("by giving the Secretary the authority to unilaterally extend the period for maintaining records, ... Congress has recognized that the six-year limitation is not absolute").
 
 
 22
 Phillips further contends that the MMS' company-wide audit procedure will require Phillips to perform a self-audit--a requirement that Phillips claims exceeds the scope of the MMS' authority. Phillips offered only the following statement in the Affidavit of Donald Sant, Deputy Associate Director for Valuation and Audit of the MMS Royalty Management Program, to support this contention:13. If the auditors' review reveals an error in payment of royalty, MMS generally will send an "issue letter" notifying the lessee of a preliminary determination of underpayment. The issue letter also may notify the lessee of a preliminary determination that a systemic deficiency may exist affecting several leases or royalty payments.
 
 
 23
 14. The lessee may respond to the issue letter and explain or demonstrate any reasons why it believes the MMS may be in error and that no underpayment exists.
 
 
 24
 15. If the lessee does not provide evidence to demonstrate that the MMS is in error, the MMS will issue an order to pay the additional royalties due. In the event of a systemic deficiency, the order may require the lessee to revise its accounting accordingly and recalculate its royalties for the relevant periods, leases, or payments.
 
 
 25
 This statement simply does not substantiate Phillips' claim that the MMS "will require Phillips and other royalty payors to audit their own records once an accounting procedure has been deemed erroneous" in contravention of the FOGRMA's requirement that an independent audit be performed. See 30 U.S.C. § 1711(c)(2). Read in the context of the remainder of the affidavit, Mr. Sant's statement does not contemplate that the MMS will require a lessee to substitute a "self-audit" for an independent audit. Instead, the statement clearly indicates that the MMS will ask Phillips and other lessees to make changes to correct repeated royalty underpayments caused by systemic deficiencies. Such a request falls squarely within the purposes of the FOGRMA. See 30 U.S.C. § 1701(b)(3) ("It is the purpose of this chapter ... to require the development of enforcement practices that ensure the prompt and proper collection and disbursement of oil and gas revenues owed to the United States and Indian lessors."). Therefore, we hold that Phillips' contention lacks merit.
 
 
 26
 Phillips and Arco also suggest that the MMS' initiation of an audit of "all" of their leases is impermissible because the MMS may not be able to diligently pursue an audit of all of these leases. As support for a "diligent pursuit" requirement, appellants point to the following segment of FOGRMA's legislative history:
 
 
 27
 The Committee intends that the Secretary will require that records be maintained beyond the 6-year limit only for such period that he is diligently pursuing an audit and will release the record holder of his obligation to maintain records at the earliest possible date.
 
 
 28
 H.R.Rep. No. 859, 97th Cong., 2d Sess., at 29 (1982), U.S.Code Cong. & Admin.News 1982, pp. 4268, 4283. Even if this excerpt from the FOGRMA's legislative history imposes an enforceable obligation on the DOI, we conclude that summary judgment was appropriate because the record indicates that no genuine issue exists as to the MMS' diligence in pursuing its audits of Phillips and Arco.
 
 
 29
 Appellants also contend that the MMS' September 19, 1989 letter violates the six-year statute of limitations in 28 U.S.C. § 2415. Section 2415(a) establishes a six-year statute of limitations on "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract." In Phillips I, we clearly held that although § 2415 may provide a legitimate defense to a claim for underpayment of royalties, it does not apply to limit the DOI's right under the FOGRMA to order lessees to maintain and provide records. 951 F.2d at 259-60. Therefore, appellants' contention based on § 2415 is without merit.
 
 II. Phillips' Paperwork Reduction Act Claim
 
 30
 In addition to the September 19, 1989 letter, the MMS also submitted two document requests to Phillips. Phillips contends that because these information collection requests fail to show a current Office of Budget and Management number, see 44 U.S.C. § 3512, the requests do not comply with the Paperwork Reduction Act (PRA), 44 U.S.C. §§ 3501-3520. Therefore, Phillips argues that a penalty may not be imposed if it refuses to comply with the requests.
 
 
 31
 Appellees, on the other hand, contend that the PRA specifically exempts the collection of information related to the MMS' audit of Phillips from the requirements of the PRA. Section 3518(c)(1)(B) of Title 44 of the United States Code provides that "this chapter [the PRA] does not apply to the collection of information ... during the conduct of ... an administrative action or investigation involving an agency against specific individuals or entities." (Emphasis added.) We agree with the district court that the MMS' audit of specific lessees, such as Phillips or Arco, clearly falls within the parameters of this exemption.
 
 III. The MMS' Information Requests to Arco
 
 32
 Arco contends that the MMS' Request No. 89-23 requires Arco to generate and produce records that the MMS regulations do not require it to keep. Arco further argues that the FOGRMA does not authorize the Secretary to require a lessee to produce records that the lessee was not required by rule to produce and keep.
 
 
 33
 Appellees, on the other hand, argue that Arco's objections to Request No. 89-23 are not ripe for judicial review because the Request was informal in nature and not a final agency action. In Ash Creek Mining Co. v. Lujan,, 934 F.2d 240 (10th Cir.1991), we recently stated that "before a court may review an agency decision, it must evaluate 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " Id. at 243 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). We recognized that, in making ripeness determinations in the context of agency actions,
 
 
 34
 [t]he Supreme Court has given us four factors to consider: (1) whether the issues in the case are purely legal; (2) whether the agency action involved is "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action has or will have a direct and immediate impact upon the plaintiff and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency. Abbot Laboratories, 387 U.S. at 149-54, 87 S.Ct. at 1515-18; see Placid Oil Co. v. Federal Energy Regulatory Comm'n, 666 F.2d 976, 981 (5th Cir.1982).
 
 
 35
 Id. With respect to the second factor, we stated that "[f]or an administrative order to be final, it must 'impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.' " Id. (quoting Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948)).
 
 
 36
 Arco contends that the issue related to Request No. 89-23 is ripe because, by failing to comply with the request, it could be subjected to penalties for failure or refusal "to permit lawful entry, inspection, or audit" under 30 U.S.C. § 1719(c)(2). In their brief supporting their motion for summary judgment, appellees relied on the affidavit of Donald Sant to support their claim that the Request had not yet reached a degree of formality that would make it ripe for judicial review. In his affidavit, Mr. Sant stated that, when collecting data and documents from a lessee, the MMS auditors make informal requests either orally or in writing. He then noted that
 
 
 37
 [i]f a lessee refuses to comply with an informal data request, the auditor will send a formal letter requesting the data or reasons that it will not be produced. The lessee may provide reasons that the particular data is unavailable; the lessee and the agency may agree to alternative records that will serve the same auditing purpose.
 
 
 38
 12. If a company fails to provide data after the submission of this letter, MMS will either issue an order to produce documents or will issue a subpoena under 30 U.S.C. 1717.
 
 
 39
 Based on the information-gathering process described in Mr. Sant's affidavit, it is clear that the agency's action was not final. According to this process, the MMS' handwritten Request was informal. After the MMS submitted the Request, Arco still had the opportunity to provide reasons why it would not comply with the Request or to negotiate an alternative method for serving the same auditing purpose. Further, a conclusion that the Request was not a final agency action is consistent with the purpose of the ripeness doctrine as applied to agency actions: " 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " Ash Creek Mining Co., 934 F.2d at 243 (quoting Pacific Gas & Elec. Co. v. Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 200, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983)) (emphasis added).
 
 
 40
 After reviewing the record, including Arco's brief in opposition to appellees' motion for summary judgment, we conclude that Arco failed to make a showing sufficient to establish that a genuine issue of material fact exists with respect to whether Request No. 89-23 was a final agency action. See High Plains Natural Gas v. Warren Petroleum Co., 875 F.2d 284, 290-91 (10th Cir.1989) ("A party resisting summary judgment may not rely upon mere assertions but rather has the obligation to make a factual showing."). Therefore, we hold that the district court appropriately granted appellees' motion for summary judgment with respect to Request No. 89-23.[1]
 
 
 41
 Arco also contends that "should this Court find that the audit engagement letter was ineffective to extend the statutory six-year periods, then the Court should remand issues regarding Request No. 90.A to the district court." Because we hold that the MMS' September 19, 1989 letter appropriately required Arco to continue to maintain its records related to leases for the period October 1, 1983 through September 30, 1989, we do not address Arco's arguments related to Request No. 90.A.
 
 
 42
 AFFIRMED.
 
 
 
 *
 The Honorable Richard D. Rogers, Senior District Judge for the United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 It is not clear whether the district court granted summary judgment with respect to Request No. 89-23 on ripeness grounds or on grounds related to the merits of Arco's claim. Nevertheless, we may affirm a judgment on grounds not relied upon by the district court as long as those grounds are supported by the record. Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988)