ANR PIPELINE COMPANY, Petitioner

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

Michigan Consolidated Gas
Company, Intervenor.

No. 94–1705.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 13, 1995.

Decided Dec. 12, 1995.

Daniel F. Collins, argued the cause for petitioner, with whom G. Mark Cook and Christine R. Pembroke, were on the briefs.

Katherine Waldbauer, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent, with whom Jerome M. Feit, Solicitor, and Joseph S. Davies, Deputy Solicitor, were on the briefs.

Dennis R. O'Connell, Lois M. Henry and Steven H. Neinast were on the brief for intervenor Michigan Consolidated Gas Company.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

Petitioner ANR Pipeline Company ("ANR") appeals from a decision of the Federal Energy Regulatory Commission ("FERC") allowing Michigan Consolidated Gas Company ("MichCon") to use blended rates for interstate service. MichCon, an intrastate gas pipeline company, provides interstate service under FERC jurisdiction pursuant to the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. §§ 3301–3432 (1994). ANR, which competes against MichCon to provide the same interstate service, is an interstate gas pipeline company subject to FERC jurisdiction under the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717–717w (1994). As an interstate pipeline, ANR is required, pursuant to Order No. 636,[1] to use a straight fixed-variable ("SFV") rate-setting scheme that does not allow rate blending. ANR contends that, in view of FERC's determination in Order No. 636 that blended rates in interstate transportation services are anticompetitive, FERC's refusal to limit MichCon's use of blended rates is arbitrary and capricious. Because FERC is required to ensure, through reasoned consideration, that MichCon's rates for its interstate transportation services are fair and equitable, we grant the petition.

## I.

Under the NGA, interstate pipelines such as ANR are subject to FERC regulation while intrastate pipelines operating intrastate generally are not.[2] However, in 1978, Congress enacted the NGPA, in part to eliminate the regulatory barriers between the intrastate and interstate markets and to promote the entry of intrastate pipelines into the interstate market. *Louisiana Intrastate Gas Corp. v. FERC*, 962 F.2d 37, 39 (D.C.Cir. 1992); *Associated Gas Distributors v. FERC*, 824 F.2d 981, 1001 (D.C.Cir.1987) (*AGD I*), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). Thus, the NGPA enabled FERC to " 'facilitate[ ] development of a national natural gas transportation network without subjecting intrastate pipelines, already regulated by State agencies, to [FERC] regulation over the entirety of their operations.' " *Associated Gas Distributors v. FERC*, 899 F.2d 1250, 1255 (D.C.Cir.1990) (*AGD II*) (quoting H.R.REP. No. 543, 95th Cong., 1st Sess. 45 (1977), *reprinted in* 1978 U.S.C.C.A.N. 7659, 7712) (alterations in *AGD II*).

Section 311 of the NGPA authorizes FERC to allow intrastate pipelines to transport gas "on behalf of" interstate pipelines or local distribution companies served by interstate pipelines so long as their rates are "fair and equitable" and do not "exceed an amount which is reasonably comparable to the rates and charges which interstate pipelines would be permitted to charge for providing similar transportation service." 15 U.S.C. § 3371(a)(2)(A), (B)(i). Thereafter, in Order No. 63,[3] FERC authorized Hinshaw pipelines to apply for certificates of authorization to transport natural gas in interstate commerce to the same extent and in the same manner as intrastate pipelines were allowed to do

---

**1.** *Pipeline Service Obligations And Revisions To Regulations Governing Self–Implementing Transportation Under Part 284 Of the Commission's Regulations, and Regulation of National Gas Pipelines After Partial Wellhead Decontrol*, [Current] F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939, at 30,389 (1992) ("Order No. 636"), *reh'g granted in part and denied in part and clarified*, [Current] F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950, at 30,-521 (1992) ("Order No. 636–A"), *reh'g denied and clarified*, 61 F.E.R.C. ¶ 61,272, at 30,521 (1992) ("Order No. 636–B"), *reh'g denied*, 62 F.E.R.C. ¶ 61,007, at 61,014 (1993) ("Order No. 636–C"), *appeal pending sub nom. United Distribution Cos. v. FERC*, No. 92–1485, 1994 WL 315233 (D.C.Cir.).

**2.** Section 1(c) of the NGA, 15 U.S.C. § 717(c), known as the Hinshaw Amendment, exempted from FERC regulation intrastate pipelines that receive natural gas at their state boundary that is consumed within the state and subject to state commission regulation. *See Interstate Natural Gas Co. v. FPC*, 331 U.S. 682, 690–91, 67 S.Ct. 1482, 1487–88, 91 L.Ed. 1742 (1947). These pipelines are known as Hinshaw pipelines. The Hinshaw Amendment overruled *FPC v. East Ohio Gas Co.*, 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268 (1950). *See Public Util. Comm'n v. FERC*, 900 F.2d 269, 275 n. 4 (D.C.Cir.1990).

**3.** *Certain Transportation, Sales and Assignments by Pipeline Companies not Subject to Commission Jurisdiction Under Section 1(c) of the Natural Gas Act*, [Reg.Preambles 1977–81] F.E.R.C. Stats. & Regs. (CCH) ¶ 30,118, at 30,824, 30,825 (1980) ("Order No. 63").

under § 311 of the NGPA. 18 C.F.R. § 284.224(b)(3) (1995); *see also Texas Utils. Fuel Co.*, 68 F.E.R.C. ¶ 61,027, at 61,095, 61,097 (1994).

Under FERC's Order No. 46,[4] adopted in 1978 and 1979 to apply the fair and equitable standard to § 311 service, an intrastate pipeline that has received a blanket certificate to operate "on behalf of" interstate pipelines has three rate-scheme options: it can elect to use rates for comparable service approved by its state utility commission, design its rates based on the methodology approved by its state utility commission for its intrastate rates, or allow FERC to set the rates. 18 C.F.R. § 284.123(b) (1995). Rates elected under any one of these options are "presumed" to be "fair and equitable" under § 311 of the NGPA. *Id.* § 284.123(d)(1). As part of Order No. 63, FERC also promulgated "look-alike" rules for Hinshaw pipelines, including the rate-election provisions. *Id.* § 284.224. The regulations for Hinshaw pipelines differ from the regulations for intrastate pipelines in that FERC must further approve any "methodology" rate. *Id.* § 284.224(e)(2).

In 1980, MichCon, a local distribution company that qualifies as a Hinshaw pipeline, applied for and received a blanket certificate authorizing it to engage in the interstate transportation of gas subject to FERC's jurisdiction under § 311 of the NGPA. *Michigan Consol. Gas Co.*, 12 F.E.R.C. ¶ 61,044, at 61,069–70 (1980); *see* 18 C.F.R. § 284.224(b). Initially, because MichCon had no rates on file with its state regulatory agency for comparable intrastate service, it used a rate methodology for other intrastate service authorized by the Michigan Public Service Commission and approved by FERC. *Michigan Consol. Gas Co.*, 12 F.E.R.C. ¶ 61,044, at 61,069–70; *see* 18 C.F.R.

§§ 284.123(b)(1)(i), 284.224(e)(2). MichCon gave notice to FERC in 1994 that it now had a rate on file with the Michigan Public Service Commission for comparable service, and that it was changing its rate election from the "methodology" rate to the new rate on file with the state commission. *See* 18 C.F.R. §§ 284.123(b)(1)(ii), 284.224(e)(2). FERC issued a public notice of the proposed rate election, invited comments by intervenors or protestors, *see* Notice, 59 Fed.Reg. 15,406 (1994), and subsequently granted ANR's motion to intervene.

In commenting on MichCon's election of state rates, ANR argued that FERC should not approve MichCon's petition because the rates on file with the state commission were blended rates otherwise prohibited to interstate competitors of MichCon, such as ANR. Specifically, ANR sought to have FERC condition its approval of MichCon's application of its blended rate authority in a manner consistent with FERC's SFV rate design. Under current FERC regulations adopted in Order No. 636, interstate gas companies must recover all fixed costs related to a customer's gas transportation service through monthly demand, or reservation, fees.[5] 18 C.F.R. § 284.8(d) (1995). In the past, under the modified fixed-variable ("MFV") rate design, all variable costs, as well as some portions of a company's fixed costs, were recoverable through usage, or commodity, fees. Order No. 636, at 30,431–35. Thus, a company could "blend" rates by shifting more or less of its fixed costs to the usage component of its rate, thereby having "differing levels of fixed costs in pipeline usage charges." *Id.* at 30,433. ANR asserts that rate blending gives a company the ability to "discount" its reservation fee, while still recovering fixed costs through the usage component of the rate. By contrast, under the new SFV rate design imposed on inter-

---

4. *Interim Regulations Implementing the Natural Gas Policy Act of 1978*, [Reg.Preambles 1977–81] F.E.R.C. Stats. & Regs. (CCH) ¶ 30,026, at 30,-125 (1978); *Sales and Transportation of Natural Gas*, [Reg.Preambles 1977–81] F.E.R.C. Stats. & Regs. (CCH) ¶ 30,081, at 30,534 (1979) ("Order No. 46").

5. Rates charged by gas companies for the transportation of natural gas have two components: the reservation, or demand, component and the

usage, or commodity, component. The reservation component is the amount paid by a customer to allocate a certain quantity of natural gas that it might need each month. The usage component is the amount paid by that customer for each unit of natural gas actually shipped for the relevant period. *See Columbia Gas Transmission Corp. v. FERC*, 628 F.2d 578, 582 n. 12 (D.C.Cir. 1979).

state pipelines in Order No. 636 to replace the MFV design, an interstate company can no longer "blend" rates. Under SFV, an interstate pipeline cannot shift any of its fixed transportation costs to the usage component of its rate, but must assign all such costs that it wishes to recover to the reservation fee. 18 C.F.R. § 284.8(d); Order No. 636, at 30,434. According to FERC, the prohibition on rate blending promotes Congress' goal, in the Natural Gas Wellhead Decontrol Act of 1989, Pub.L. No. 101–60, 103 Stat. 157 (1989), of a national gas market. Order No. 636 at 30,434. ANR sought to have FERC impose the same condition on MichCon, so that, like ANR, MichCon could no longer recover any fixed costs through usage charges.

During restructuring under Order No. 636, ANR had sought permission to continue to blend rates. However, FERC strictly enforced the SFV requirement on the ground that rate blending would hinder competition among gas sellers. *ANR Pipeline Co.*, 64 F.E.R.C. ¶ 61,140, at 61,996, 62,014–16 (1993). Consequently, in the MichCon proceeding, ANR maintained that, because blended rates would permit MichCon to have the anticompetitive flexibility in discounting the reservation portion of its rate that interstate pipelines did not have, ANR was at a competitive disadvantage, contrary to FERC's statutory obligation to ensure that MichCon's rates for jurisdictional service are fair and equitable.

FERC approved MichCon's election of the blended rates without condition and denied ANR's request for reconsideration.[6] *Michigan Consol. Gas Co.*, 68 F.E.R.C. ¶ 61,090, at 61,539 (1994), *reh'g granted in part and denied in part*, 68 F.E.R.C. ¶ 61,311, at 62,291 (1994). Initially, FERC simply took the position that MichCon had the right under the regulations to elect the state rates; thus, were FERC to modify that rate it would be taking away that right and "imposing a Commission-established rate." *Id.* at 61,542. On rehearing, FERC explained that, although it

had determined in Order No. 636 that SFV was the preferred rate design and had placed a heavy burden on companies proposing an alternative rate design, it had not required intrastate or local distribution companies transporting gas under § 311 of the NGPA to use an SFV rate design and declined to do so now. 68 F.E.R.C. ¶ 61,311, at 62,293. Historically, FERC pointed out, it had never specified any rate design for § 311 pipelines; nor had it "attempted to achieve complete uniformity between interstate and intrastate pipelines in this regard." *Id.* Thus, notwithstanding the disparity between MichCon's and ANR's rate schemes with regard to the discounting of reservation charges, FERC concluded: "ANR fails ... to articulate why the rate design approved for MichCon's intrastate service is unfair and inequitable when applied to MichCon's section 311 service. Interstate pipelines utilizing an SFV rate design have the ability to discount rates to stay competitive." *Id.* FERC noted that its "focus has been to ensure that the rates charged by an intrastate pipeline for interstate service are fair and equitable when compared with the rates charged by the pipeline for its intrastate service." *Id.* ANR appeals.

## II.

Initially, we address two procedural arguments FERC makes as to why this court should not reach the merits of ANR's petition.

■ First, FERC maintains that ANR's challenge to MichCon's election of state rates is an impermissible collateral attack on Order No. 46 and the resulting regulations implementing § 311 of the NGPA, which made clear that intrastate companies providing interstate services would not be treated the same as interstate companies regulated under the NGA and that state-approved rates would be presumed fair and equitable. *See, e.g., JEM Broadcasting Co. v. FCC*, 22 F.3d 320, 325 (D.C.Cir.1994). However, FERC

---

6. FERC did deny MichCon's request to use state-approved market-based rates for contract storage rates because FERC's regulations required the use of cost-of-service rates, 18 C.F.R. § 284.1(b) (1995), and MichCon failed to show that the

market for the use of storage facilities would impose limitations on the exercise of market power in a similar manner as cost-of-service rates. 68 F.E.R.C. ¶ 61,090, at 61,541–42.

mischaracterizes ANR's petition. Just as FERC treated ANR's claim, ANR's petition in this court does not attack the § 311 regulations but rather FERC's order allowing MichCon to charge blended rates. It is too late for FERC to recast its view of ANR's claim. *See Placid Oil Co. v. FERC,* 666 F.2d 976, 982 n. 15 (5th Cir.1982) (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)); *see also Western Resources, Inc. v. FERC,* 9 F.3d 1568, 1576 (D.C.Cir.1993). On remand, FERC could either amend the order or attempt to reconcile it with the reasoning underlying the § 311 regulations. As neither resolution requires invalidating the regulations, FERC cannot properly cast ANR's petition as a collateral attack on those regulations.

Second, FERC maintains that ANR's appeal of its Order No. 636 restructuring proceeding would provide a better avenue for considering ANR's challenge to MichCon's election. ANR has a pending petition for review in this court of FERC's decision to deny ANR permission to use blended rates or to "grandfather" its existing blended rates. *Wisconsin Distributor Group v. FERC,* No. 93–1602 (D.C.Cir.). Yet regardless of how this court handles that petition, ANR's claim in the instant case that FERC has failed to justify its different treatment of MichCon will be unaffected. Therefore, FERC has shown no reason for this court to defer deciding the merits of ANR's petition.

### III.

 ANR contends that, by refusing to limit MichCon's authority to blend its interstate rates, FERC acted contrary to its determination in Order No. 636 that rate blending is anticompetitive and contrary to Congress' goal for a national gas market, without providing a reasoned explanation. Indeed, where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious. *Pontchartrain Broadcasting Co. v. FCC,* 15 F.3d 183, 185 (D.C.Cir.1994); *Graphic Communications Int'l Union, Local 554 v. Salem–Gravure,* 843 F.2d 1490, 1493 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1011,

109 S.Ct. 1119, 103 L.Ed.2d 182 (1989). In determining whether an agency has provided a reasoned explanation for departing from precedent or treating similar situations differently, the court looks only to the reasons given by the agency. *SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459–60, 87 L.Ed. 626 (1943); *Western Resources,* 9 F.3d at 1575–76; *Placid Oil Co.,* 666 F.2d at 982 n. 15.

In Order No. 636, FERC explained that adopting the SFV rate design promoted the congressional goal of a national gas market and "goes hand-in-hand with the equality principle." Order No. 636, at 30,434. According to FERC:

> This approach is as essential to the shipment of gas on even terms as is equality in the quality of service with respect to gas transportation. SFV would, therefore, maximize the benefits of wellhead decontrol by increasing the nationwide competition among gas merchants (including pipelines). This should result in head-to-head, gas-on-gas competition where the firm transportation rate structure is not a potentially distorting factor in the competition among merchants for gas purchasers at the wellhead and in the field.

*Id.* FERC also concluded that the SFV rate design would maximize the volume of pipeline-transported gas because gas would be able to compete with alternative fuels. *Id.* at 30,435. In FERC's words: "[I]t is beyond doubt that it is in the national interest to promote the use of clean and abundant natural gas over alternate fuels such as foreign oil. SFV is the best method for doing that." *Id.* (footnote omitted). Consequently, because the MFV design "is not in the public interest, unreasonably hinders competition among gas sellers, and is unjust and unreasonable under NGA section 5," FERC requires anyone "advocating something other than SFV [to] carr[y] a heavy burden of persuasion." *Id.* at 30,434.

Moreover, when, in the course of restructuring to implement Order No. 636, ANR attempted to retain the authority to blend rates, FERC responded that "[t]he flexibility proposed by ANR would undermine the intended *generic* effect of using SFV rates to

minimize volumetric charges to avoid interfering with the competitive wellhead market." *ANR Pipeline Co.,* 62 F.E.R.C. ¶ 61,-079, at 61,519, 61,536 (1993) (emphasis added), *reh'g granted in part and denied in part,* 64 F.E.R.C. ¶ 61,140, at 61,996 (1993). FERC maintained that ANR had failed to demonstrate what benefits would "justify such a potentially significant change from what the Commission has determined to be the proper rate design to promote a national gas transportation grid and fair competition among merchants on a level playing field." *Id.* On reconsideration, FERC reiterated:

> In Order No. 636, we found that any level of fixed costs in a pipeline's commodity rates can hinder competition among gas sellers. The fact that the blended rate on ANR would be capped such that it cannot exceed the combined demand and commodity rates on a 100 percent load factor basis does not mean that the blended rate would be any less anti-competitive.

*ANR Pipeline Co.,* 64 F.E.R.C. ¶ 61,140, at 62,015. FERC concluded that "Order No. 636 clearly requires use of the SFV methodology and finds other rate design methods which place fixed costs in the commodity rates to be unjust and unreasonable." *Id.* at 62,015–16.

Nevertheless, FERC has approved MichCon's election of blended rates, *Michigan Consol. Gas Co.,* 68 F.E.R.C. ¶ 61,090, at 61,542, without addressing the determinations in Order No. 636 regarding the detrimental effect of blended rates on the interstate transportation market, or suggesting how MichCon would overcome the heavy burden that an interstate pipeline company would have to bear under Order No. 636 to use blended rates. *See, e.g., Natural Gas Pipeline Co.,* 73 F.E.R.C. ¶ 61,050, at 61,124, 61,129–30 (1995). In its regulations adopted in Order No. 46, FERC has provided that a state-approved rate is "presumed" to be "fair and equitable" under § 311 of the NGPA. 18 C.F.R. § 284.123(d). In its decision here, FERC appeared to treat that presumption as rebuttable, in that it denied ANR's request because ANR had "fail[ed] ... to articulate why" MichCon's rates were not "fair and equitable" as applied. 68 F.E.R.C. ¶ 61,311,

at 62,293. And in its brief, FERC reiterates that ANR failed to make a sufficient showing to "overcome th[e] presumption" in § 284.123(d). Respondent's Brief at 32. The treatment of the presumption as rebuttable is an appropriate interpretation of FERC's own regulations. *See* 15 U.S.C. § 3371(c); *North Am. Fund Management Corp. v. FDIC,* 991 F.2d 873, 875 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 418, 126 L.Ed.2d 364 (1993). Because FERC found in Order No. 636 that blended rates are anticompetitive, ANR can rebut the presumption without presenting further economic analysis.

Our disposition of this appeal thus rests on the fundamental change in rate design required by FERC for interstate transportation pipelines in Order No. 636. That change, and the determinations underlying it, may or may not require FERC to reexamine some of the assumptions under which it has dealt with intrastate and Hinshaw pipelines operating in interstate commerce under § 311 of the NGPA. Suffice it to say that, in addressing ANR's concerns about MichCon's use of blended rates, FERC must provide a reasonable justification for excluding MichCon from the SFV requirements, in view of FERC's conclusions about rate blending and about the necessity of the SFV rate method to promoting congressional directives for a national natural gas market.

The reasons given by FERC fail to explain why MichCon's blended rates would not present the ills that FERC concluded in Order No. 636 would result from continued authority to blend rates. First, FERC deferred to MichCon's right to elect the state-approved rates and relied on its historical practice. 68 F.E.R.C. ¶ 61,090, at 61,542. However, any "right" that MichCon has under Order Nos. 46 and 63 to elect rates is subject to the statutory "fair and equitable" standard. 15 U.S.C. § 3371(a)(2)(B)(i). FERC cannot avoid its continuing responsibility for determining whether a Hinshaw pipeline's interstate rates are fair and equitable. *See AGD II,* 899 F.2d at 1256. Indeed, the regulations adopted by FERC to carry out § 311 reflect this understanding. The blanket certificate simply authorizes a Hin-

shaw pipeline to operate subject to FERC's jurisdiction under the NGA to the same extent (except as to the method of setting rates) as an interstate pipeline. *See* 18 C.F.R. § 284.224(b)(3). Because the presumption in § 284.123(d) that the elected rates are "fair and equitable" is rebuttable, FERC's historical practice alone cannot suffice to explain why MichCon can elect rates that FERC has more recently described as anticompetitive and contrary to congressional goals. Indeed, if the presumption were not rebuttable and FERC declined to scrutinize rate elections to determine whether the rates were "fair and equitable," FERC would be shirking its statutory duty under § 311 of the NGPA.

Second, FERC maintains in its brief that the Hinshaw exemption, 15 U.S.C. § 717(c), and § 311 of the NGPA reveal a distinction between the interstate service provided by Hinshaw pipelines and that provided by interstate pipelines that justifies their disparate treatment. FERC has strictly construed the Hinshaw exemption, consistent with the congressional purpose "to exempt from federal jurisdiction 'matters primarily of local concern' and not to disturb the interstate character of Natural Gas Act jurisdiction." *Boston Gas Co.*, 57 F.E.R.C. ¶ 61,054, at 61,215 (1991) (quoting S.REP. No. 817, 83rd Cong., 1st Sess. 2 (1953), *reprinted in* 1954 U.S.C.C.A.N. 2101, 2103); *see also Interstate Natural Gas Co.*, 331 U.S. at 689–91, 67 S.Ct. at 1486–88. FERC provided no reason in its decision for why the Hinshaw exemption is relevant to interstate service such as that at issue in MichCon's rate election. Section 311 of the NGPA sets forth a different standard for interstate rates promulgated by intrastate pipelines from the standard for interstate pipelines—"fair and equitable" rather than "just and reasonable." 15 U.S.C. § 3371(a)(1)(B), (a)(2)(B)(i). Although we have no occasion to decide whether these two standards are substantively different, *see Louisiana Intrastate Gas Corp.*, 962 F.2d at 43; *but cf. United Gas Pipe Line Co. v. FERC*, 707 F.2d 1507, 1514–15 (D.C.Cir.1983) (Wilkey, J., dissenting), FERC did not explain in its decision why the concerns in Order No. 636 did not carry over into the consideration under the "fair and equitable" standard. Hence, neither the Hinshaw exemption nor § 311 of the NGPA suffices to explain different treatment of Hinshaw and intrastate pipelines in the face of the generic change in rate setting for interstate service under Order No. 636.

Most important, FERC has not explained how its determinations in Order No. 636 are inapplicable to MichCon's use of blended rates for its interstate transportation services. In Order No. 636, FERC completed the restructuring of services provided by interstate natural gas pipelines. Order No. 636 at 30,392–94. FERC acknowledged that SFV represented a "generic change in pipeline transportation rates to eliminate potential competitive distortions in pipeline rate structures." *Id.* at 30,431. As part of Order No. 636, FERC adopted "regulations to ensure that all gas supplies are moved to market on even terms."[7] *Id.* at 30,433. FERC also stated that its conclusion with respect to the rejected MFV design "applies equally to other methods that recover fixed costs in the usage charge." *Id.* Specifically, FERC stated:

> This situation of differing levels of fixed costs in pipeline usage charges can hinder competition between gas sellers at the wellhead because competition is not based on the seller's costs and therefore on their ability to compete directly with each other. Rather, competition for sales customers is influenced by the fixed costs in the pipeline transportation usage charges.... The MFV cost classification method results in the shipment of gas on uneven, rather than on even, terms and will inhibit the development of a national market which "will yield lower prices and more abundant supplies" by "over time forc[ing] the evolution of a set of lowest-cost producers" as envisioned by Congress in decontrolling the price of gas at the wellhead and in the field. Accordingly ... the Commission concludes that MFV is not in the public interest,

---

7. Similarly, for many aspects of the quality of interstate service, FERC requires that intrastate pipelines abide by the same rules as interstate pipelines. 18 C.F.R. §§ 284.123(b)(1), 284.8, 284.9.

unreasonably hinders competition among gas sellers, and is unjust and unreasonable under NGA section 5.

*Id.* at 30,433–34 (quoting H.R.Rep. No. 29, 101st Cong., 1st Sess. 7 (1989), *reprinted in* 1989 U.S.C.C.A.N. 51, 57) (alteration in Order No. 636). Therefore, FERC prohibited interstate companies from recovering any fixed transportation costs through their usage fees. *Id.* at 30,434. FERC's suggestion that ANR and other interstate pipelines can remain competitive by discounting their rates misses the point. 68 F.E.R.C. ¶ 61,311, at 62,293. A pipeline that cannot blend rates is unable to recover fixed costs foregone as a result of discounting its demand charges. Conversely, a pipeline with the ability to blend rates can recover such fixed costs by shifting them from the demand charge to the usage charge.

FERC inexplicably focused, not on ANR's objection relating to the lack of comparability to interstate service governed by the SFV rate design, but rather on comparability to MichCon's intrastate service. FERC concluded that MichCon's elected interstate rates, although allowing rate blending, were "fair and equitable" because the Michigan Public Service Commission had approved those rates for MichCon's comparable service to its intrastate customers. *Id.; see* 18 C.F.R. § 284.123(b)(1). Yet FERC has also concluded in Order No. 636 that such rate blending contravenes congressional goals for all gas merchants in the national market. Order No. 636, at 30,434.

Accordingly, because FERC's reasons, individually and collectively, for approving MichCon's unconditional use of blended rates fail to confront FERC's determination of the anti-competitive nature of blended rates in interstate transportation service, we grant the petition, reverse the decisions in *Michigan Consolidated Gas Co.*, 68 F.E.R.C. ¶ 61,-090 and 68 F.E.R.C. ¶ 61,311, except with respect to the denial of MichCon's storage-rate request, and remand the case for further proceedings.