KAREN LeCRAFT HENDERSON, Circuit Judge
Under the Federal Meat Inspection Act of 1907 (“FMIA”), 21 U.S.C. §§ 601 et seq., and implementing regulations, the Food Safety and Inspection Service (“FSIS”), an agency of the United States Department of Agriculture (“USDA”), is charged with ensuring, inter alia, that certain commercial meat products are not misbranded. If the FSIS determines that' a meat product’s labeling is “false or misleading in any particular,” 21 U.S.C. § 607(e), it can prohibit its use. Pursuant to that authority, the FSIS determined that the packaging used by United Source One, Inc. (“US1”), a meat exporter, was misbranded because its label included the FSIS inspection identification number of its supplier without the latter’s permission. For the reasons that follow, we deny USl’s petition for review.
I. Background

Regulatory Landscape

The Congress enacted the FMIA to protect “the health and welfare of consumers ... by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged.” 21 U.S.C. § 602. To that end, the FMIA mandates inspection of certain commercial meat products as well as the facilities—referred to as “official establishments”[1]—where *712 those products are handled. Id. § 608. By-regulation, the FSIS carries out that mandate. 9 C.F.R. § 300.2(b)(1). “[D]ay or night,” FSIS inspectors have access to an official establishment to ensure that it operates in sanitary conditions and that its meat is not “adulterated.” 21 U.S.C. § 606(a). Commercial meat products that meet the FMIA’s standards are marked as “[¡Inspected and passed.” Id. At 9 C.F.R. § 312.2, the following example of an “official mark” of inspection appears:
[[Image here]]
Each FSIS inspection mark includes a unique establishment number[2] that identifies the product as having been “prepared” in the facility to which the establishment number belongs. 9 C.F.R. § 305.1(a) (“An official number shall be assigned to each establishment granted inspection ... [and] shall be used to identify all inspected and passed products prepared in the establishment.”). An authorized FSIS inspection mark ordinarily must appear both on the “immediate container” of a commercial meat product, for example, vacuum packaging, id. § 317.1, and on any external container, for example, a shipping box, see id. § 316.13.
Ordinarily, an official establishment does not ship its products directly to the end-use consumer. Instead, an official establishment ships meat to a “re-boxing” facility, a middleman operation that repackages and resells, meat, often under a different brand name. Because the re-boxer itself does not slaughter meat, it is not subject to the FMIA’s mandatory inspection requirements. See 21 U.S.C. § 608 (“The *713 Secretary shall cause to be made ... such inspection of all ... establishments in which amenable species are slaughtered and the meat and meat food products thereof are prepared for commerce.... ”). Nonetheless, the Agricultural Marketing Act of 1946 (“AMA”), 7 U.S.C. §§ 1621 et seq., and implementing regulations provide that a re-boxing facility may voluntarily pay for and obtain FSIS identification services.[3] See 9 C.F.R. § 350.3. FSIS Directive 12,600.1, adopted pursuant to the AMA, provides guidance on the implementation/enforcement of those services. See FSIS Directive 12,600.1, Voluntary Reimbursable Inspection Services (U.S.D.A. 2007) (hereinafter “Directive 12,600.1”). Once the re-boxer participates, the FSIS inspection works, inter alia, to “ensure that the identity of federally-inspected and passed meat ... is maintained throughout the division of such meat ... into smaller portions, its combination into larger units, or its repackaging and relabeling.” Id. at 3. If the FSIS “determine[s] that the identity [of the repackaged meat] has been maintained,” that is, the meat has not been adulterated once it has passed its official establishment inspection, the FSIS “mark[s] such portions or units [of the repackaged meat] with the marks of Federal inspection.” 9 C.F.R. § 350.3(a)(1).
As with an official establishment, the FSIS assigns each re-boxing facility its own, unique establishment number that is included as part of the inspection mark on the re-boxer’s label. See Directive 12,-600.1 at 6 (“If the [re-boxing] facility meets the requirements for the requested service(s), the [FSIS] will request the next available [establishment] number through the Resource Information System ... [and] assign the number to the facility....”). Unlike an official establishment’s establishment number, however, which begins with “P” or “M,” etc., to designate that it is subject to poultry or meat inspections, respectively, see supra 4 n.2, a re-boxer’s establishment number begins with “V” to indicate that the FSIS inspection conducted there is pursuant to the AMA inspection regime. See Food Safety Inspection Serv., FSIS Meat, Poultry and Egg Product Inspection Directory Legend for Establishment Numbers and Directory Search Guidance 1 (2017); accord JA 15, 69-70 (indicating USl’s establishment number is “V21467”). Nevertheless, FSIS Directive 12,600.1 provides that a re-boxer may use its supplier’s establishment number on its label if certain conditions are met:
Whenever labeling with the originating official establishment number is used by [a re-boxing] facility (i.e., labeling depicting the official number of the establishment that produced the product), inspection program personnel will verify that the [re-boxing] facility code marks the product in a manner that will clearly indicate that the product was last handled and labeled at the [re-boxing] facility. The [re-boxing] facility must maintain records of label transfers and records of products labeled or relabeled at the facility to identify properly the product origin in the event of a product control problem, (e.g., voluntary product recall).
Directive 12,600.1 at 8-9.
Athough the FMIA focuses on ensuring the quality of meat products, it also prohibits—as noted earlier—misleading and/or misbranded labeling. To wit, the FMIA prohibits both an official establishment and a re-boxing facility from “do[ing] ... any act ... which is intended to cause or has the effect of causing [meat] to be *714 ... misbranded.” 21 U.S.C. § 610(d). Meat is misbranded “if its labeling is false or misleading in any particular.” Id. § 601(n)(l) (emphasis added). 9 C.F.R. § 317.8(a) likewise provides that “[n]o product or any of its ... packaging ... shall bear any false or misleading marking, label, or other labeling and no statement, word, picture, design, or device which conveys any false impression or gives any false indication of origin or quality or is otherwise false or misleading shall appear in any marking or other labeling.” The misbranding prohibition includes the FSIS official mark of inspection. 21 U.S.C. § 601(p) (“The term ‘labeling’ means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article.”).
If the FSIS determines that labeling is false or misleading, thereby rendering a meat product “misbranded,” id. § 601(n)(l), it may direct that the labeling “be withheld” from use, id. § 607(e) (“If the [FSIS] has reason to believe that any marking or labeling ... is false or misleading in any particular, [it] may direct that such use be withheld....”). Once the FSIS determination becomes final, an aggrieved party may petition for review within thirty days thereafter. Id. (“Any such determination by the Secretary shall be conclusive unless, within thirty days after receipt of notice of such final determination, the person, firm, or corporation adversely affected thereby appeals to the United States court of appeals.... ”).

Factual and Procedural Background

US1 operates a re-boxing facility that exports meat and other food products to customers in the Middle East.[4] Because US1 is a re-boxer, it is not subject to the mandatory FSIS inspection. See 21 U.S.C. § 608. Instead, US1 participates in the AMA voluntary FSIS inspection services. See 7 U.S.C. § 1622; 9 C.F.R. § 350.3(a). In January 2012, US1 ceased including its establishment number—“V21467”—on its labeling; instead, it replaced “21467” with the FSIS-assigned number of the official establishment from which US1 purchased meat products. The following is a depiction of the two different marks:
[[Image here]]
[[Image here]]
Compare Letter, United Source One, Inc. v. USDA, Case No. 16-1209 (D.C. Cir. April 28, 2017) (arrow added) (US1 establishment number), with JA 67 (arrow added) (supplier establishment number). US1 continued this practice for three years.
On January 27, 2015, an FSIS inspector determined that US1 did not have its supplier’s consent to include the latter’s establishment number on its label. Accordingly, the Office of Field Operations (“OFO”), FSIS, “refuse[d] to authorize” USl’s con- *715 timed use of its supplier’s “inspection legend and establishment number.” JA 112. Viewing the consent requirement as an unannounced policy change, US1 “request[ed] the FSIS [inspector] assigned to United Source One be advised to allow the warehouse to resume re-boxing product and applying the originating plant establishment number.” JA 15. In response, the FSIS upheld its inspector’s action, noting that US1 “must have permission from the supplier to apply [its] establishment number to re-packaged product.” JA 17. Subsequently, the FSIS explained that, if a re-boxing facility uses an official establishment’s number, “it [is] readily transparent that the producing establishment was authorizing the use of their labels because they were physically shipped by the producer to the receiving establishment or ID warehouse for use.” JA 75. But USl’s supplier did not ship its labels to US1; instead, US1 apparently printed labels with the supplier’s establishment number without that supplier’s consent/knowledge. JA 75 (“In this case, the labels are printed at [USl’s] warehouse with another establishment’s (i.e., the producer’s) number on it.”).[5]
US1 then appealed the decision, first to the FSIS Assistant Administrator and, ultimately, to the FSIS Administrator. JA 81-83, 112-17. In his final determination, the Administrator concluded, inter alia, that “[a]bsent a documented ■ transfer of labels, or other records that would assure FSIS of the knowledge, consent, or direction of the owner of the official establishment number, FSIS has reason to be-heve that the consuming public may be misled by application of the [supplier’s] official mark of inspection” on USl’s, packaging. JA 117. The Administrator emphasized that, consistent with Directive 12,600.1, a re-boxer uses a supplier’s establishment number only with that supplier’s consent, consent effected by, inter alia, the supplier transferring its labels to the re-boxer—“[transfer of labels itself provides clear knowledge and consent of the use of an establishment’s inspection legend.”[6] JA 114. He concluded, “USl’s printing of labels, re-boxing, application of labels, and other handling of the product in question was done absent of [sic] the knowledge, direction, or control of the originating establishment,” JA 114, and, further, that “[w]ithout some form of documentation providing some means of written consent for the use of an establishment’s official inspection legend, FSIS is unable to determine that the label is not misleading to the consumer, and cannot authorize its use,” JA 115. The Administrator thus deemed USl’s label “misleading, therefore providing a false impression, and misbranded by definition under 21 U.S.C. [§ ] 601” and denied USl’s appeal. JA 114. US1 then filed a timely petition for review. Our jurisdiction is based on 21 U.S.C. § 607(e).
II. Analysis
Because the FMIA and implementing regulations plainly authorize the FSIS to withhold from use labeling that is “false or misleading in any particular,” 21 *716 U.S.C. § 607(e), we review its decision for reasonableness under the familiar arbitrary and capricious review standard of the Administrative Procedure Act (“APA”). 5 U.S.C. § 706 (directing court to “hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law”); see also Arent v. Shalala, 70 F.3d 610, 616 (D.C. Cir. 1995). “The scope of review under the ‘arbitrary and capricious’ standard is narrow and a court is not to substitute its judgment for that of the agency.” Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). We must ensure that the agency “examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.” Id. (internal quotation marks omitted). Although we will “uphold a decision of less than ideal clarity if .the agency’s path may reasonably be discerned,” id. (internal quotation marks omitted) (quoting Bowman Transp., Inc. v. Ark-Best Freight Sys., Inc., 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)), we cannot “supply a reasoned basis for the agency’s action that the agency itself has not given,” id. (citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947)).
Applying this standard here, we believe that the FSIS’s determination that USl’s labeling is misleading is neither arbitrary nor capricious. In his final determination, the Administrator noted that the FSIS permits a re-boxer to use its supplier’s establishment number only if the supplier consents to the practice, consent “historically” given by transferring its labels containing its establishment number to the re-boxer. JA 114 (“FSIS has previously explained that labeling policies and the regulations have historically permitted official establishments to arrange for off-site labeling/re-labeling of their product at approved [re-boxing] facilities, by transferring their labels, bearing their official inspection legend, to such facilities, provided documentation of such transfers and other applicable records are made available to inspection personnel.”); accord Directive 12,600.1 at 8 (“The [re-boxing] facility must maintain records of label transfers and records of products labeled or relabeled at the facility....”). The Administrator further found that “US1 has not provided documentation as requested, in accordance with 9 CFR 320.1(b)(ll), showing consent of the official establishment.” JA 114. USl’s use of a supplier’s establishment number, then, does not simply—and erroneously—signify ' that one five-digit number is, or can be, interchangeable with another without more; instead, it signifies that US1 has the supplier’s consent to use the supplier’s establishment number on USl’s packaging. But that signification is false—US1 printed its supplier’s inspection mark at its own facility without the latter’s consent and incorporated it as part of its label. JA 75. We believe the Administrator reasonably concluded that
[a]bsent a documented transfer of labels, or other records ... assuring] FSIS of the knowledge, consent, or direction ... of the official establishment number, FSIS has reason to believe that the consuming public may be misled by application of the official mark of inspection. FSIS cannot authorize application of any label to a meat or poultry product when there is reason to believe that its use has the effect of causing such articles to become misbranded.
JA 117; see also JA 114 (USl’s labeling “provide[d] a false impression, and [was therefore] misbranded by definition under 21 U.S.C. [§ ] 601.”). On these facts, we *717 conclude that the FSIS “examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a ‘rational connection between the facts found and the choice made.’ ” Motor Vehicle Mfrs. Ass’n, 463 U.S. at 43, 103 S.Ct. 2856. Although the Administrator’s analysis is less than pellucid, we must “uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.” Id. (quoting Bowman Transp., 419 U.S. at 286, 95 S.Ct. 438).
US1 makes various counterarguments but none is persuasive. First, US1 insists that the Administrator’s final determination is “not in accordance with law,” reciting 9 C.F.R. § 350.3(a)(1)—the AMA regulation under which US1 voluntarily participates in the FSIS inspection program—that an FSIS inspector place the “marks of Federal inspection” on a meat product’s label before resale. Examples of the “official marks” of federal inspection are set forth in 9 C.F.R. § 312.2 and, as noted, the number “38” is used. See supra 712. Footnote 1 of that regulation explains that the “number ‘38’ is given as an example only” and that the “establishment number of the official establishment where the product is prepared shall be used in lieu thereof.” 9 C.F.R. § 312.2 n.l (emphasis added). Because footnote 1 recites that the official establishment’s number “shall be used” in place of “38,” US1 insists that it is entitled to—indeed, required to—use the establishment number of its supplier—the “official establishment”—instead of its own, irrespective of the official establishment’s consent. We disagree. Footnote 1 merely makes plain that the official establishment is to use its establishment number instead of the placeholder “38.” See id.
Next, US1 argues that the FSIS’s consent requirement constitutes a new “legislative rule” and is invalid because it was not promulgated in accordance with the APA. Granted, we have often said that “[l]egislative rules have the ‘force and effect of law’ and may be promulgated only after public notice and comment.” Nat’l Min. Ass’n v. McCarthy, 758 F.3d 243, 250 (D.C. Cir. 2014). But no new rule was promulgated here. The Administrator’s final determination does not impose any new legal obligation on US1; instead, it enforces a preexisting prohibition of misleading labeling set forth in the FMIA and implementing regulations. See 21 U.S.C. §§ 601(n)(1), 607(e), 610(d); 9 C.F.R. § 317.8(a).
Finally, US1 insists that the Administrator’s final determination represents an unexplained departure from agency precedent because US1, while subject to FSIS inspection, used its supplier’s establishment number on its labels for three years without complaint. “[Wjhere an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious.” ANR Pipeline Co. v. FERC, 71 F.3d 897, 901 (D.C. Cir. 1995). But there was no departure from precedent—no “pri- or policies and standards [were] deliberately changed.” Ramaprakash v. FAA, 346 F.3d 1121, 1124 (D.C. Cir. 2003) (quoting Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1970)). Instead, the FSIS, albeit tardily, rectified its inspectors’ apparently isolated (on this record) failure to verify that US1 had its supplier’s consent to use the latter’s establishment number. Although the non-enforcement is lamentable, especially on the part of personnel charged with ensuring the “health and welfare of consumers,” 21 U.S.C. § 602, we discern no FSIS “departure] from established precedent.” ANR Pipeline Co., 71 F.3d at 901.
*718 For the foregoing reasons, the petition for review is denied.[7]

So ordered.

. An “official establishment” is "[a]ny slaughtering, cutting, boning, meat canning, curing, smoking, salting, packing, rendering, or similar establishment at which inspection is maintained under” the FMIA implementing regulations. 9 C.F.R. § 301.2. As explained infra, US1 does not fit the "official establishment” description—US1 is a re-boxing facility that, at its option, is subject to FSIS inspection under the Agricultural Marketing Act of 1946, 7 U.S.C. §§ 1621 et seq., not the FMIA. But it, like an official establishment, is subject to the misbranding/mislabeling prohibitions. of the FMIA. 21 U.S.C. § 610 ("No person, firm, or *712 corporation shall, with respect to ... meat or meat food products ... do ... any act while they are being transported in commerce or held for sale after such transportation, which is intended to cause or has the effect of causing such articles to be ... misbranded.”).

. FSIS Directive 5220.2 provides additional guidance on the "issuance of traditional establishment numbers,” which are "used in the official mark of inspection and may be used in labels.” FSIS Directive 5220.2, Meat and Poultry Establishment Numbering Procedures (U.S.D.A. 1992). A traditional establishment number "begins with the single code letter that designates the type(s) of inspection performed at the establishment.” Id. For example, "P” indicates that poultry inspections are conducted at the establishment; "E” indicates equine inspections; "I,” import inspections; and "A,” animal food inspections. Id. "M” indicates meat inspections but, in most instances, including here, it is not included in an establishment number, presumably because meat inspections are so constant. Id. ("[A]ny establishment number in the traditional format which does NOT begin with a single letter code is designating red meat inspection.”). Following the code letter (assuming one is required), the "next 5 positions are numeric digits, but leading zeros are not shown.” Id.

. A re-boxer voluntarily participates in the FSIS inspection program so that it can label the meat products it ships as USDA inspected and approved. JA 52.

. That is, US1 purchases vacuum-sealed meat products from an official establishment and then re-boxes those products in packaging bearing a label with USl's name, address, branding ("Great Plains”) and the FSIS inspection mark.

. THE COURT: Mr. Gardner, where did you get the label from the original source? Did you print it?
MR. GARDNER: We printed it. Yes, Your Honor.
Oral Arg. Tr. 3.

. FSIS Directive 12,600.1 requires "[t]he [re-boxing] facility ... [to] maintain records of label transfers ... to identify properly the product origin in the event of a product control problem....” Directive 12,600.1 at 8-9; see also id. at 8 ("Inspection program personnel will verify that facilities are using approved labels, wrappers, or containers bearing the official mark of inspection.”).

. Regarding the dissenting opinion, we and our dissenting colleague are like ships passing in the night. Of course he is right that a rule must be preceded by notice and comment and that, if that procedure is leapfrogged, the rule is ultra vires and cannot be enforced. No argument there. But we are not dealing with an unenforceable rule—the FSIS determined that the properly promulgated (and unchallenged) regulation prohibiting misleading and misbranded labeling was violated by USl's failure to follow Directive 12,600.1. That failure produced a false label.
Next, the dissent points out that the FSIS does not contend "that United Source One obtained the meat anywhere other than [from] the original establishment.” Dissent Op. 719. True. It does contend, however, and US1 admits, that the supplier's label was not obtained therefrom but was instead printed by US1 itself, necessarily without its source's consent.
Finally, the dissent apparently differentiates between a label violation and "a violation of conduct,” concluding that the former does not "cure the defective source of the nonexistent regulation.” Dissent Op. 719. Unsure of what is meant by a "violation of conduct,” we again respond that USl’s use of its supplier’s establishment number is "misleading” because it signifies that US1 has the supplier's consent to use the latter’s establishment number on USl’s packaging. Directive 12,600.1 explains why USl's labeling is misleading.