Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 18, 2003       Decided October 21, 2003

No. 02-1283

TILAK S. RAMAPRAKASH,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION AND
NATIONAL TRANSPORTATION SAFETY BOARD,
RESPONDENTS

———

On Petition for Review of an Order of the
National Transportation Safety Board

———

*Mark T. McDermott* argued the cause for petitioner. With him on the briefs was *Peter J. Wiernicki*.

*Kathleen A. Yodice* was on the brief for *amicus curiae* Aircraft Owners and Pilots Association.

*James A. Barry*, Attorney, Federal Aviation Administration, argued the cause for respondents. With him on the briefs was *Peter J. Lynch*, Assistant Chief Counsel.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: ROGERS and ROBERTS, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Learned Hand once remarked that agencies tend to "fall into grooves, . . . and when they get into grooves, then God save you to get them out."[1] Judge Hand never met the National Transportation Safety Board. In this case, we grant the petition for review because the Board has failed adequately to explain its departures from its own precedent in no fewer than three significant respects.

## I.

Petitioner Tilak Ramaprakash was arrested for driving under the influence of alcohol in Doraville, Georgia, in December 1996, and was convicted of that offense on February 25, 1997. As a licensed pilot, he was subject to Federal Aviation Regulation (FAR) § 61.15 (codified at 14 C.F.R. § 61.15 (2003)), which requires pilots to provide the Federal Aviation Administration (FAA) with a written report of any "motor vehicle action" within sixty days. *Id.* § 61.15(e). The regulation defines "motor vehicle action" to include a "conviction . . . for the violation of any Federal or State statute relating to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug." *Id.* § 61.15(c)(1).

Ramaprakash admits that he did not file the required report. His violation of FAR § 61.15(e) occurred on April 26, 1997, when the sixty-day period for filing the report ended. Twelve months later, on April 22, 1998, the FAA formally initiated administrative proceedings to suspend his pilot's certificate by issuing a Notice of Proposed Certificate Action

---

[1] Hearings to Study Senate Concurrent Resolution 21 Before a Subcommittee of the Senate Committee on Labor and Public Welfare, 82nd Cong., 1st Sess. 224 (1951) (quoted in Henry J. Friendly, *Benchmarks* 106 (1967)).

(NOPCA). The NOPCA proposed to suspend his certificate for thirty days in accordance with FAR § 61.15(f)(2), which provides that a violation of § 61.15(e) is grounds for "[s]uspension or revocation of any certificate" issued under FAR Part 61. In February 1999, the FAA ordered that Ramaprakash's license be suspended for thirty days. He appealed to the National Transportation Safety Board (NTSB or Board).

Before the NTSB, Ramaprakash conceded that he had committed a FAR violation, but moved for dismissal of the FAA's action against him in light of the Board's "stale complaint rule" — Rule 33 of the NTSB's Rules of Practice in Air Safety Proceedings, codified at 49 C.F.R. § 821.33 (2002). That rule provides, in pertinent part:

> Where the complaint states allegations of offenses which occurred more than 6 months prior to the [FAA] Administrator's advising respondent as to reasons for proposed [certificate] action . . ., respondent may move to dismiss such allegations pursuant to the following provisions:
>
> (a) In those cases where a complaint does not allege lack of qualification of the certificate holder:
>
> (1) The Administrator shall be required to show by answer filed within 15 days of service of the motion that good cause existed for the delay, or that the imposition of a sanction is warranted in the public interest, notwithstanding the delay or the reasons therefor.
>
> (2) If the Administrator does not establish good cause for the delay or for imposition of a sanction notwithstanding the delay, the law judge shall dismiss the stale allegations and proceed to adjudicate only the remaining portion, if any, of the complaint.[2]

---

[2] Rule 33 provides a separate procedure for cases in which the FAA alleges a lack of qualification — typically a more serious charge. Even if some or all of the allegations in the complaint are stale, the case may proceed if the administrative law judge "deems that an issue of lack of qualification would be presented by any or all of the allegations, if true." 49 C.F.R. § 821.33(b)(2). *See*

4

It was undisputed that the FAA had failed to meet Rule 33's six-month deadline: the NOPCA was issued nearly one year after Ramaprakash's FAR violation. The question before the NTSB was whether "good cause existed for the delay."

Answering that question requires some understanding of how the FAA monitors compliance with the FAR reporting requirement. One way it does so is by compiling and periodically sending to the National Driver Register (NDR) lists of individuals who seek to obtain or renew their medical certifications. The NDR then matches the names against its own records, which contain information on individuals whose drivers' licenses have been denied, revoked, suspended, or canceled for cause, or who have been convicted of serious driving offenses. *See* 49 U.S.C. § 30304(a). The information in the NDR is not detailed enough to show whether the offense involved is one for which a report must be filed under FAR § 61.15; when the FAA receives a computer tape from the NDR with a list of the names that have matched an NDR record, an FAA investigator must then check the National Law Enforcement Telecommunications System (NLETS) database for details of each airman's motor vehicle incident. If the NLETS data show that the incident was a reportable offense, the FAA investigator then searches the agency's records to determine whether the airman filed the required report.

A detailed affidavit from FAA official Mark Sweeney described the course of the FAA's investigation of Ramaprakash's violation. On May 16, 1997, the FAA received from the NDR a computer tape indicating a motor vehicle incident in Georgia involving Ramaprakash. The tape was routed to an FAA investigator in May 1997, but apparently no action was taken until September 1997, when the investigator was

*Administrator v. Stewart*, 2 NTSB 1140, 1142 (1974) ("If the complaint involves the qualifications of the airman, then the safety implications are deemed sufficiently compelling to override the purposes of the rule").

transferred to a new FAA assignment. A second investigator took possession of the tape, but this investigator too was reassigned in October 1997, and the tape was passed on to a third investigator. After working through a backlog of prior tapes, this investigator turned to the tape that included Ramaprakash's record and conducted the NLETS query on February 4, 1998. The NLETS database revealed that the incident disclosed on the NDR was in fact a DUI conviction, and by February 10, 1998, the investigator had searched FAA records and learned that Ramaprakash had failed to report it. *See* Sweeney Aff. at 2–3, JA 101–02.

The Board, by a 3–2 vote, concluded that the FAA had shown good cause for the delay in issuing the NOPCA. The Board stated that under Rule 33, "the Administrator must show that good cause existed for the delay in discovering the offense and that, upon discovery, she investigated the matter with due diligence." *Administrator v. Ramaprakash*, NTSB Order No. EA–4947 (February 7, 2002), at 5, *available at* 2002 WL 226617 (Order Denying Appeal). The NTSB further found that the FAA "did not have an indication of a possible section 61.15(e) violation until [the] NLETS query indicated that the NDR listing was in reference to a reportable alcohol-related motor vehicle action," and that the FAA had been sufficiently diligent in proceeding to issue the NOPCA after receiving the NLETS information. *Id.* at 6. The Board then observed that there was no evidence that the delay had affected Ramaprakash's ability to defend against the FAA complaint, and concluded that the FAA was entitled to some — but not unlimited — leeway in prioritizing its enforcement efforts. *Id.* at 7, 8. In dissent, Member Goglia (joined by Member Hammerschmidt) rejected the majority's contention that Rule 33 allowed a balancing of the FAA's interest in prioritizing enforcement against pilots' need for timely prosecution: "There either 'is' a stale complaint rule, or there 'is not.'" *Id.* at 9.

Ramaprakash sought reconsideration, but the Board refused to reconsider its decision. In its brief order, the Board stated:

As we explained in our original decision, we decline to extend the stale complaint rule under these circumstances, i.e., where the "delay" is non-prejudicial to respondent's ability to defend against the charges . . . and accrued, essentially, because the Administrator chose to delegate her resources in a manner that would not immediately, but eventually, detect airmen's non-compliance with a mandatory reporting requirement that respondent admits to not adhering to.

*Administrator v. Ramaprakash*, NTSB Order No. EA–4984 (July 16, 2002), at 1, *available at* 2002 WL 1586404 (Order Denying Reconsideration). Member Goglia, again joined by Member Hammerschmidt, dissented. *Id.* at 2–6. This petition for review followed.

## II.

Under the Administrative Procedure Act (APA), a court may set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Our review under the APA is highly deferential, but agency action is arbitrary and capricious if it departs from agency precedent without explanation. Agencies are free to change course as their expertise and experience may suggest or require, but when they do so they must provide a "reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970); *see also Philadelphia Gas Works v. FERC*, 989 F.2d 1246, 1250–51 (D.C. Cir. 1993). An agency's failure to come to grips with conflicting precedent constitutes "an inexcusable departure from the essential requirement of reasoned decision making." *Columbia Broad. Sys. v. FCC*, 454 F.2d 1018, 1027 (D.C. Cir. 1971).

In the orders challenged here, the Board deviated from its precedent in three respects. The first is in the NTSB's answer to the question whether FAA delays should be more readily excused if the alleged FAR violation is relatively

serious. In *Administrator v. U.S. Jet, Inc.*, 7 NTSB 246 (1990) — a case involving an alleged lack of qualification — the Board unequivocally rejected the argument that it should bend its procedural rules because the alleged violation was serious. In dismissing the FAA's appeal on the grounds that the FAA had failed to show "good cause" for its failure to meet the prescribed deadline for filing its appeal brief, the NTSB stated:

> We decline the invitation to carve out for the Administrator's benefit alone a public interest exception to our policy of dismissing appeals that are not prosecuted with due diligence.

> We recognize that even cases involving important air safety issues can fall victim to procedural nonfeasance.... However, ... we think the public interest and basic principles of fairness favor rules that treat litigants equally over those that, based on presumptions flowing from the seriousness of *alleged* conduct, create procedural advantage for one party. That circumstance ... counsels against both the necessity and the propriety of modifying the good cause standard in a way that, in effect, would allow the Administrator to escape responsibility for compliance with rules of practice we strictly apply to all others.

7 NTSB at 246–47.

In a nearly identical case four years later, the Board again refused to find that the public interest in air safety could create an exception to the Board's requirement that good cause be shown to excuse a delay:

> [P]rocedural decisions should [not] be based on post-default generalities or presumptions about the importance or the desirability of reaching the merits of a case a party ha[s] not handled in accordance with applicable rules. ...

> We continue to believe that requiring parties to exercise a high level of diligence in the prosecution

> of their appeals to us is the best way to ensure that all cases, and especially those that may involve extraordinary air safety concerns, will be heard by the full Board.

*Petition of White*, NTSB Order No. EA–4100, 1994 WL 66062, at *1–2.

In its Order Denying Appeal in this case, however, the NTSB considered the nature and seriousness of Ramaprakash's FAR violation in determining whether the FAA had shown good cause. The Board emphasized that it would be "particularly difficult to justify" applying the stale complaint rule to bar the FAA's complaint, "given the importance to air safety of monitoring the alcohol-related infractions of certificated airmen, and the likelihood that they would go undetected but for the self-disclosure requirements of FAR section 61.15(e)." Order Denying Appeal at 7.

This suggestion that the Board is more willing to find good cause in cases that have serious implications for air safety is inconsistent with *U.S. Jet* and *White*, and the Board did not attempt to explain that departure from precedent. Nor did the Board explain how its statement comports with the text of Rule 33. The rule allows a stale complaint to escape dismissal if the FAA can show good cause for the delay, but it also states that a stale complaint can survive if the FAA can show that "the imposition of a sanction is warranted in the public interest, notwithstanding the delay or the reasons therefor." 49 C.F.R. § 821.33(a)(1). There would appear to be little need for the public interest to be weighed in any determination of whether good cause exists for delay, when the rule provides an independent and adequate avenue by which stale complaints found to implicate the public interest can proceed.

Indeed, the Board in the past has found the seriousness of a violation to be a reason to be less, rather than more, lenient in finding good cause for delay. The Board noted in *Administrator v. Dill*, NTSB Order No. EA–4099, 1994 WL 78131, that the stale complaint rule stems from the fact that "unsafe conditions require speedy remedy" and that the rule "is meant to advance, not retard, safety enforcement." *Id.* at *3.

An NTSB administrative law judge later took *Dill* to mean that "justice delayed is safety denied." *Neel v. Administrator*, NTSB Docket No. 210–EAJA–SE–13573 (1996), 1994 WL 804032, app. (Administrative Law Judge Opinion) at *11 n.34. In Ramaprakash's case, by contrast, the Board accepted the argument that serious violations can serve to excuse investigative delays — that even when justice is delayed, safety is enhanced.

The Board's second departure from its precedent lies in its analysis of the role that prejudice plays under the stale complaint rule. For more than twenty years, the NTSB has explained that a party seeking dismissal of a stale complaint is not required to show prejudice from the delay. In *Administrator v. Zanlunghi*, 3 NTSB 3696 (1981), the Board was unequivocal: "[Rule 33] . . . does not impose on a respondent the burden of demonstrating that a specific delay has in fact prejudiced his defense." *Id.* at 3697. *Administrator v. Parish*, 3 NTSB 3474 (1981), is equally clear: "Rule 33 reflects our recognition that a respondent's ability to defend against FAA charges *can* be seriously prejudiced through unreasonable delay . . . . The rule thus creates a presumption that prejudice *does* exist when six months have passed and a respondent has not been informed that action is contemplated . . . ." *Id.* at 3474 (emphases added); *see also Dill*, 1994 WL 78131, at *3 n.9 ("The [stale complaint] rule does not impose on a respondent the burden of demonstrating that a specific delay has in fact prejudiced his defense. Instead, a respondent is presumed to have been prejudiced" (citing *Zanlunghi*)); *Administrator v. Brea*, NTSB Order No. EA–3657, 1992 WL 220488, at *1 ("Rule 33 raises a presumption that a lapse of more than six months between the occurrence of an alleged FAR violation and the issuance of a [NOPCA] prejudices a respondent" (citing *Parish*)).

The Board's approach here is a complete about-face. In the Order Denying Appeal, the Board stated:

> [Ramaprakash] does not assert that, had the complaint been filed sooner, he would have answered

> differently or been better equipped to defend against the Administrator's allegations. . . .
>
> In these circumstances, specifically, where a respondent's ability to defend against a charge has not been compromised by the passage of time between the admitted violation and the action to sanction it, it would be arbitrary to dismiss the complaint under a rule designed to forestall evidentiary difficulties that can arise because of prosecutorial delay.

Order Denying Appeal at 7. The Board reiterated this holding in the Order Denying Reconsideration: "As we explained in our original decision, we decline to extend the stale complaint rule under these circumstances, i.e., where the 'delay' is non-prejudicial to respondent's ability to defend against the charges (having admitted all factual allegations). . . ." Order Denying Reconsideration at 1. This language is impossible to square with *Zanlunghi*, *Parish*, and their progeny. Those cases make it clear that prejudice is presumed when a complaint alleges violations that occurred more than six months before the NOPCA. Applying the stale complaint rule to Ramaprakash's case would not "extend" the rule at all — unless the Board is no longer adopting a presumption of prejudice.

The FAA argues that the Board did not impose a requirement of prejudice — that it simply concluded that the presumption of prejudice had been overcome in Ramaprakash's case. FAA Br. at 41. The NTSB has indeed indicated that the presumption of prejudice is rebuttable. *See, e.g.*, *Dill*, 1994 WL 78131, at *3 n.9 (citing *Zanlunghi*, 3 NTSB at 3697). Contrary to the FAA's assertion, however, the Board did not characterize its decision as a finding that the presumption in Ramaprakash's case had been rebutted. Both of the challenged orders simply noted that prejudice was absent — not that it had been presumed and then rebutted. Order Denying Appeal at 7; Order Denying Reconsideration at 1.

The third, and perhaps most consequential, respect in which the Board departed from its precedent involves the longstanding requirement of prosecutorial diligence in stale

complaint cases. In denying Ramaprakash's appeal, the Board noted that the stale complaint rule is "designed to forestall evidentiary difficulties that can arise because of prosecutorial delay," Order Denying Appeal at 7, but avoiding such prejudice is not the only purpose of the stale complaint rule. At least as important, the Board has emphasized for decades, is the incentive that the rule provides for the FAA to improve air safety by promptly investigating and punishing those who violate the FAR. As long ago as 1974, the NTSB declared that "[i]t is the purpose of [the stale complaint rule] to assure that the Administrator's investigation and prosecution of alleged regulatory violations is pursued with reasonable diligence and that prospective charges not be held over an airman's head for an unreasonable period . . . ." *Stewart*, 2 NTSB at 1142; *see also Dill*, 1994 WL 78131, at \*3 (same, adding that the rule "will ordinarily bar untimely prosecution, and thereby act as a stimulus to diligent safety enforcement").

In its prior cases interpreting Rule 33, the Board has repeatedly stated that diligent investigation of *possible* violations is essential to a finding that good cause exists for a delay in issuing a NOPCA. In *Zanlunghi*, for example, the NTSB noted that a finding of good cause is warranted when there is evidence that "reasonable diligence [was] exercised following the FAA's non-contemporaneous receipt of information concerning the potentially actionable conduct." 3 NTSB at 3697. The Board elaborated that it knew that "the FAA may not always immediately learn of conduct which may have been violative of the FAR." *Id.* In the same vein, the Board stated in *Brea* that "belated awareness" of "the possibility of an FAR violation" may serve as good cause for a delay in issuing a NOPCA, "provided that reasonable prosecutorial diligence is exercised" after the FAA receives "information concerning the act(s) or omission(s) which may be indicative of such a violation." 1992 WL 220488, at \*1. Most recently, in *Dill*, the Board said that to avoid dismissal of a stale complaint, the Administrator must show "that he exercised reasonable prosecutorial diligence after his receipt of the

information concerning the possible violations." 1994 WL 78131, at *4.

*Zanlunghi*, *Brea*, and *Dill* speak of *potentially* actionable conduct, of *possible* violations, of conduct that *may* have violated the FAR, or of acts or omissions that *may indicate* a violation. None of the cases suggests that the FAA can wait until it has confirmation of a violation before beginning to work diligently on issuing a NOPCA. This choice of language makes sense: if diligence is required, it should begin as soon as the ball is in the FAA's court. It would make little sense to apply a requirement of diligence to only part of the period during which a case demanded nothing other than FAA attention. The Board in these cases quite reasonably recognized that in some situations the FAA may be completely ignorant of a potential violation for some time, but insisted that once the FAA is tipped off to a potential violation, it must act diligently if it intends to show good cause for the overall delay.

The Board departed from this precedent in the Order Denying Appeal, adopting a different trigger for the diligence requirement. Preliminary indications were once adequate, but now the discovery of the violation itself is the triggering event. *See* Order Denying Appeal at 5 (holding that the Administrator must show that "upon discovery, she investigated the matter with due diligence"). As the dissenting Board members noted, the Board's holding meant that "so long as the Administrator proceeds with due diligence after she discovers the violation, she may wait an indefinite amount of time . . . to discover that violation and save her complaint from the stale complaint rule." Order Denying Reconsideration at 4.

The Board majority found that although the NDR tape of May 16, 1997, listed Ramaprakash's name, "the Administrator did not have an indication of a possible section 61.15(e) violation until her NLETS query" on February 4, 1998. Order Denying Appeal at 6. This statement purports to hew more closely to the language of *Zanlunghi* and *Brea*, but it does not stand up to scrutiny because it fails to account for why the investigator conducted the NLETS query. No NLETS query would have been necessary unless the FAA already had an indication of a possible violation. The NDR

tape provided that indication, and the tape meets the definitions in *Zanlunghi*, *Brea*, and *Dill* that emphasize preliminary information as the trigger for the prosecutorial diligence requirement. The NLETS information increased the probability that a violation had occurred (which ripened to a certainty when the FAA agent determined on February 10, 1998, that Ramaprakash had not reported the motor vehicle action); but if the FAA can take as long as it pleases to move from one level of certainty to another — when the only constraint is the FAA's own allocation of its investigative resources — then the prosecutorial diligence requirement so clearly established in the *Zanlunghi* line of cases has all but disappeared. The Board cannot undertake such a departure from its precedent without providing a reasoned explanation for its decision, and it provided none here.

The Board's heavy reliance on *Administrator v. Ikeler*, NTSB Order No. EA–4695, 1998 WL 564088, in both of the challenged orders, *see* Order Denying Appeal at 5, 8; Order Denying Reconsideration at 1–2 n.1, may account for why the Board did not explain the inconsistency between its current approach and that of *Zanlunghi* and its progeny. *Ikeler*, decided in 1998, held that "in order to survive a motion to dismiss [a] stale complaint, [the Administrator] must show that good cause existed for the delay in discovering the incident, and that reasonable diligence was exercised in investigating the matter once she learned that a possible violation had occurred." 1998 WL 564088, at *1. *Ikeler* is at least arguably distinguishable from the orders at issue here,[3] but even if we assume (as the majority of the Board did) that *Ikeler* is controlling, that assumption would not defeat the argument that the Board has departed from its precedent; it would merely require us to examine whether *Ikeler* itself contains an explanation for its departure from cases such as *Brea* and *Zanlunghi*. *See Hatch v. FERC*, 654 F.2d 825, 834 (D.C. Cir. 1981) (noting that FERC's duty to explain a

---

[3] The two Board members who dissented from the orders in Ramaprakash's case concurred in the Board's unanimous order in *Ikeler*; this suggests that, at least by their lights, *Ikeler* is distinguishable from the instant case.

departure from precedent is not discharged by FERC's reliance on two of its recent cases "since they do not contain announcement of a new standard and supporting rationale either"); *see also Pittsburgh Press Co. v. NLRB*, 977 F.2d 652, 660 (D.C. Cir. 1992) ("We do not think it enough to say that this latest decision is consistent with the general drift of NLRB precedent, as it is that very drift that troubles us."). *Ikeler* does not contain the needed explanation. It merely purports to rely on *Brea* and "cases cited therein," 1998 WL 564088, at *1, while articulating a different standard that led in Ramaprakash's case to a significant curtailment of the prosecutorial diligence requirement.

The FAA argues that *Ikeler* (and, by extension, the orders challenged here) is not a departure from Board precedent at all, suggesting that it is consistent with the Board's decisions in *Administrator v. Gotisar*, NTSB Order No. EA–4544, 1996 WL 784076, and *Administrator v. Cady*, 5 NTSB 364 (1985). FAA Br. at 28–30. The delay in *Gotisar* occurred when the FAA had to wait for the State of Hawaii to send it copies of an aviator's driving record; in *Cady* the respondent was a maintenance employee who used improper parts when overhauling an aircraft engine — a violation that was not discovered until the engine, still in the possession of its owners, was disassembled several years later. *See Gotisar*, 1996 WL 784076, at *1; *Cady*, 5 NTSB at 366. These cases may indeed hold that "good cause existed for the belated discovery of violations where the [FAA] had to go beyond information in its possession to determine the existence of a regulatory violation," FAA Br. at 35, but they are hardly analogous to the present case, in which no third party obstructed the FAA's access to the information not already in its possession. This may be why the Board itself did not rely on *Cady* or *Gotisar* in *Ikeler*, and cited *Gotisar* in Ramaprakash's case only for its dictum on the purpose of the stale complaint rule. *See* Order Denying Appeal at 7.

## III.

After refusing to dismiss the FAA's complaint as stale, the Board said that it was nonetheless troubled by the length of

time between the FAA's receipt of the NDR tape and the NLETS query, and concluded:

> [B]ecause our ruling in *Ikeler* sustained a suspension order which involved a similar delay, the Administrator had no reason in this case to anticipate that we might view the issue differently. Whether *Ikeler* is followed in future cases may well depend on the magnitude of the delay, for at some point, we are inclined to believe, the Administrator's interest in prioritizing her enforcement efforts will not outweigh the negative impact of forcing an airman to answer a charge long after the conduct giving rise to it.

Order Denying Appeal at 8 (footnotes omitted).

The Board revisited this point when it denied reconsideration, stating:

> [W]e have … placed the Administrator on notice that in future cases we will look more closely at the time that elapses between the time the Administrator could have, but did not, learn of the violation by comparing readily-available evidence. As we inferred in our original decision, however, this analysis, and our continued adherence to [*Ikeler*], will depend on the specific facts of future cases and arguments pertaining to the stale complaint rule.

Order Denying Reconsideration at 1–2 n.1.

This court has observed that "the core concern underlying the prohibition of arbitrary or capricious agency action" is that agency "ad hocery" is impermissible. *Pacific N.W. Newspaper Guild, Local 82 v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989). The statements extracted above indicate that the Board has failed to satisfy this core requirement. They amount to a promise from the Board that at some point in the future, the stale complaint rule may again mean what it once did — depending on "specific facts of future cases." It is impossible at this point to tell whether the Board, in the next stale complaint case, will assess the seriousness of the

violation, or not;  will insist on a showing of prejudice, or not;  will require FAA diligence in investigating a possible violation as well as in prosecuting a known one, or not.  We have it on high authority that "the tendency of the law must always be to narrow the field of uncertainty."  O.W. Holmes, *The Common Law* 127 (1881).  The Board's unexplained departures from precedent do the opposite.  "[W]here an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious."  *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995).  For the reasons stated, we vacate the orders and remand to the Board for further proceedings.