# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 24, 2009          Decided June 30, 2009

No. 08-1218

RYAN J. MOSHEA,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD AND FEDERAL
AVIATION ADMINISTRATION,
RESPONDENTS

On Petition for Review of an Order
of the Department of Transportation

*Joseph H. Thibodeau* argued the cause and filed the briefs for petitioner.

*Agnes M. Rodriguez*, Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondent.

Before: GINSBURG and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, in which *Circuit Judge* GINSBURG joins and in

all but Section II-A of which *Senior Circuit Judge* RANDOLPH joins.

Opinion concurring in all but Section II-A filed by *Senior Circuit Judge* RANDOLPH.

KAVANAUGH, *Circuit Judge*: In 2005, the Federal Aviation Administration suspended Ryan Moshea's pilot certificate after the agency found that he had violated certain record-keeping safety regulations. Moshea appealed to the National Transportation Safety Board pursuant to the statutory process for Board review of FAA sanctions. In proceedings before the Board, he attempted to raise an affirmative defense based on his compliance with the voluntary disclosure program set out in FAA Advisory Circular 00-58. The Board ruled that it lacked jurisdiction to entertain Moshea's affirmative defense, and it affirmed his suspension. Moshea petitioned for review in this Court. We grant Moshea's petition for review, vacate the Board's decision, and remand to the Board for further proceedings.

I

Ryan Moshea worked as a certified pilot for the Key Lime Air Corporation, a commercial air cargo carrier. While conducting a cargo flight in October 2004, Moshea encountered difficulty extending the plane's landing gear. After landing, Moshea told a Key Lime mechanic about the problem. According to Moshea, the mechanic said that such difficulties were normal in cold weather. Moshea did not note the problem in the maintenance log for the plane, as required by FAA regulations. *See* 14 C.F.R. § 135.65(b); *see also* § 91.7(a); § 91.13(a). Several days later, after a few uneventful flights in the same aircraft, Moshea again had trouble lowering the aircraft's gear. Upon landing, Moshea

contacted another Key Lime mechanic and received assurances that the difficulties likely resulted from cold weather. This time, the mechanic relayed the report to his supervisor, who scheduled the plane for maintenance two days later. Moshea again did not enter the problem in the maintenance log. On the intervening day, another pilot flying the same plane experienced difficulty in deploying the landing gear. After the second pilot landed safely, the ground crew found that the landing gear was damaged.

Shortly thereafter, Key Lime voluntarily disclosed those incidents to the Federal Aviation Administration pursuant to FAA Advisory Circular 00-58, which is a publicly available document setting forth the FAA's voluntary disclosure program. Under that Circular, the FAA agrees to forgo enforcement actions under certain circumstances so as to encourage regulated parties to voluntarily report apparent violations of FAA regulations. In this case, Key Lime's voluntary disclosures included Moshea's failure to make maintenance log entries of the in-flight mechanical problems he experienced.

Applying Circular 00-58 to this case, the FAA concluded that Key Lime and a number of Key Lime employees would receive no penalty. But the FAA suspended Moshea from flying for 60 days. Moshea appealed the FAA's decision to the National Transportation Safety Board. An Administrative Law Judge initially heard the case. In that proceeding, Moshea asserted an affirmative defense based on the FAA's voluntary disclosure program, which as explained in footnote 1 covers individual employees of regulated parties under certain circumstances.[1] But the ALJ ruled that the Board

---

[1] The relevant portions of Advisory Circular 00-58 read:

6. <u>VOLUNTARY DISCLOSURE POLICY</u>. The FAA believes that the open sharing of apparent violations and a cooperative as well as an advisory approach to solving problems will enhance and promote aviation safety. Certificate holders, indirect air carriers, foreign air carriers, and PAHs will receive a letter of correction in lieu of civil penalty action for covered instances of noncompliance that are voluntarily disclosed to the FAA in accordance with the procedures set forth in this AC. Once the letter of correction is issued, the case will be considered closed unless the agreed-upon comprehensive fix is not satisfactorily completed by the appropriate entity.

. . .

13. <u>SEPARATE ACTIONS AGAINST AIRMEN OR OTHER INDIVIDUAL AGENTS</u>.
   a. The voluntary disclosure policy applies to individual airmen or other agents of an employing certificate holder, indirect air carrier, foreign air carrier, or PAH when:
   (1) The apparent violation involves a deficiency of the employing entity's practices or procedures that causes the employing certificate holder, indirect air carrier, foreign air carrier, or PAH to be in violation of a covered violation of an FAA regulation;
   (2) The airman or other agent of the employing entity, while acting on behalf of the employing entity, inadvertently violates the FAA's regulations as a direct result of a deficiency of the employing entity that causes the employing entity to be in violation of the regulations. (The voluntary disclosure policy does not apply to the airman or other agent when his/her apparent violation is the result of actions unrelated to the employing entity's deficiency);
   (3) The airman or other agent immediately makes the report of his/her apparent violation to the employing entity; and

lacked jurisdiction to consider the affirmative defense and refused Moshea's effort to admit evidence bearing on his compliance with that program. The ALJ upheld Moshea's suspension (albeit reducing it from 60 to 50 days). Moshea then appealed the ALJ's decision to the Board. The Board agreed with the ALJ that it lacked jurisdiction to hear Moshea's affirmative defense, and it affirmed the sanction of suspension. In dicta, the Board suggested (but did not rule) that Moshea may not have satisfied the specific requirements of the voluntary disclosure program in this case even if the Board had jurisdiction to entertain such a challenge.

## II

### A

The National Transportation Safety Board possesses jurisdiction to review certain Federal Aviation Administration orders, including the order of suspension at issue in this case. *See* 49 U.S.C. § 44709(d)(1). In exercising that jurisdiction, the Board is "not bound by findings of fact of the Administrator but is bound by all validly adopted interpretations of laws and regulations the Administrator carries out and of written agency policy guidance available to the public *related to sanctions* to be imposed under this section unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law." *Id*. § 44709(d)(3) (emphasis added).

---

(4) The employing certificate holder, indirect air carrier, foreign air carrier, or PAH immediately notifies the FAA of both the airman or other agent's apparent violation and the apparent deficiency in its practice or procedures.

FAA Advisory Circular 00-58 at 3-4, 9-10.

In this case, the Board concluded that FAA Circular 00-58 is not "related to sanctions" under § 44709(d)(3), even though the Circular provides that no sanctions will be imposed in cases of voluntary disclosure. *Moshea*, NTSB No. EA-5328, slip op. at 7, 2007 WL 3088248 (Oct. 17, 2007). On that basis alone, the Board concluded that Moshea could not present his affirmative defense based on Circular 00-58. *Id.* That conclusion allowed the Board to distinguish this case from the many Board cases addressing whether FAA sanctions comport with published FAA guidance documents. In this Court, the FAA reiterates the argument that Circular 00-58 is unavailable to Moshea because it purportedly "does not relate to the sanctions to be imposed." FAA Br. at 22.

We find unreasonable the efforts of the FAA and the Board to evade Circular 00-58 in this way. Without getting into a metaphysical discussion of the meaning of the phrase "related to," it suffices here to say that the words "related to" are broad. *Cf. Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth.") (footnote omitted). And we think a Circular that says no sanction will be imposed in a case of voluntary disclosure is quite obviously "related to sanctions." We conclude that the Board's analysis was unreasonable and contrary to the statute.[2]

---

[2] It is at least theoretically conceivable that the FAA in the future could try to interpret Circular 00-58 as not binding on it (for a reason other than that the Circular is purportedly unrelated to sanctions) and that the Board would uphold such an interpretation as not arbitrary and capricious under § 44709(d)(3). It seems doubtful, given the structure of this unusual statute, that the FAA's authority to "interpret[] . . . [FAA] guidance available to the public related to sanctions" under § 44709(d)(3) includes the authority to say that FAA "guidance available to the public related to sanctions"

B

The Board's analysis suffers from a separate flaw that also requires vacatur. The Board's position in Moshea's case is inconsistent with its handling of a prior case. In *Liotta*, the Board allowed an employee of an air carrier to assert an "affirmative defense" based on Advisory Circular 00-58. *Liotta*, NTSB No. EA-5297, slip op. at 6, 2007 WL 1920600 (June 27, 2007). In *Liotta*, the Board thus exercised its jurisdiction to consider an affirmative defense virtually identical to Moshea's. By departing from the *Liotta* precedent without explanation, the Board here acted in an arbitrary and capricious manner. *Cf. Ramaprakash v. FAA*, 346 F.3d 1121, 1125 (D.C. Cir. 2003) ("An agency's failure to come to grips with conflicting precedent constitutes an inexcusable departure from the essential requirement of reasoned decision making.") (internal quotation marks omitted). The Board's inconsistent treatment of Moshea's case and Liotta's case supplies an independent basis for vacating the Board's order in this case.

III

The FAA alternatively argues that the Board's decision to disallow Moshea's affirmative defense was harmless even if

is not binding. At this point, however, we need not consider whether the FAA (and the Board) could do so consistently with the statutory scheme. We do note that the Board did not suggest in its opinion in this case that Circular 00-58, if deemed to be related to sanctions, would not be binding. Moreover, in *Montgomery*, the Board stated with regard to a similar FAA policy that "regardless of whether [the policy] is characterized as a rule, regulation, or statement of policy, the Administrator is bound by its terms." *Montgomery*, 3 NTSB 2150, 2154 (1980).

erroneous. *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error"). As the FAA points out, the Board's opinion stated that Moshea did not appear to meet the requirements of the voluntary disclosure program even assuming that Moshea could assert a defense based on it. At the initial hearing, however, the ALJ denied Moshea's attempt to introduce evidence bearing on his compliance with the voluntary disclosure program. We cannot assume that the Board would have denied Moshea's affirmative defense had such evidence been introduced; the Board did not definitively analyze the significance (if any) of Moshea's proffered evidence. *Cf. Steenholdt v. FAA*, 314 F.3d 633, 640 (D.C. Cir. 2003) (no substantial prejudice where petitioner "has presented no theory under which the weak record prejudiced" his case). We therefore must decline the FAA's invitation to resolve this case on harmless error grounds.

\* \* \*

The Board had jurisdiction to decide whether the FAA's suspension of Moshea comported with the FAA's voluntary disclosure policy set forth in Advisory Circular 00-58. We accordingly grant Moshea's petition for review, vacate the decision of the Board, and remand to the Board for further proceedings.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, concurring in all but Section II-A: I do not agree that the FAA Administrator's Advisory Circular falls within the review provision of 49 U.S.C. § 44709(d)(3). The provision states that the Board is bound by the Administrator's interpretation "of written agency policy guidance available to the public related to sanctions to be imposed under this section" unless the interpretation is "arbitrary, capricious, or otherwise not according to law." § 44709(d)(3). Contradicting the Administrator and the Board, my colleagues conclude that the Circular falls within § 44709(d)(3) because it is "related to sanctions." Maj. Op. at 6. The majority's conclusion rests on a misreading of the statute. It is not enough that the guidance is related to sanctions: the guidance must be related to sanctions "to be imposed under this section." The provision thus contemplates an ongoing enforcement action, not the Administrator's decision whether to institute the action. This much follows from the fact that sanctions under § 44709 are to be imposed only in enforcement actions. Yet the very point of the Circular is to spell out when the Administrator will not bring an enforcement action. Section 44709(d)(3) therefore cannot encompass the Circular, or at least the portion of it Moshea sought to invoke as a defense. That was the Administrator's and the Board's interpretation, an interpretation I believe to be correct. At a minimum it is a reasonable view of the application of § 44709(d)(3) to the Circular and was entitled to judicial respect. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).

I join the balance of the majority opinion dealing with the Board's unexplained departure from its precedent. Maj. Op. at 7.